IN the INTEREST OF JAMIE L., a Person Under the Age of 18:

CYNTHIA E., Appellant,

v.

LA CROSSE COUNTY HUMAN SERVICES DEPARTMENT, Respondent,

Peder G. ARNESON, Guardian Ad Litem for Jamie L., Petitioner. [Case Nos. 90-1990, 91-0148.]

IN the INTEREST OF GREGORY L., a Person Under the Age of 18:

CYNTHIA E., Appellant,

v.

LA CROSSE COUNTY HUMAN SERVICES DEPARTMENT, Respondent,

Peder G. ARNESON, Guardian Ad Litem for Jamie L., Petitioner. [Case Nos. 90-1991, 91-0149.]

IN the INTEREST OF SEGER E., a Person Under the Age of 18:

*See Callaghan's Wisconsin Digest, same topic and section number.

218

CYNTHIA E., Appellant,

v.

LA CROSSE COUNTY HUMAN SERVICES DEPARTMENT,
Respondent,

Peder G. ARNESON, Guardian Ad Litem for Jamie L.,
Petitioner. [Case Nos. 90–1992, 91–0150.]

Supreme Court

*Nos. 90–1990, 90–1991, 90–1992, 91–0148, 91–0149, 91–0150.*
*Oral argument October 5, 1992.—Decided December 16, 1992.*

(Also reported in 493 N.W.2d 56.)

219

For the Guardian Ad Litem there were briefs by *Peder G. Arneson, Ellen M. Frantz* and *Johns & Flaherty, S.C.,* La Crosse and oral argument by *Ms. Frantz.*

For the appellant there was a brief by *Richard J. Auerbach* and *Auerbach and Porter,* Madison and oral argument by *Richard J. Auerbach.*

Amicus curiae brief was filed by *John Franz,* Madison for The Wisconsin Council on Human Concerns.

LOUIS J. CECI, J.   This case comes before the court on a petition for review by the guardian ad litem for Jamie L., Gregory L., and Seger E. of an unpublished decision of the court of appeals, dated December 12, 1991, which reversed orders of the circuit court for La

221

Crosse County, Michael J. Mulroy, Circuit Judge. The circuit court's orders terminated Cynthia E.'s parental rights to Jamie L., Gregory L., and Seger E. and denied Cynthia E. post-termination relief. The court of appeals reversed, holding that the written orders which initially placed the children outside the home and into foster care and the written orders which extended that placement did not contain the notice which sec. 48.356(2), Stats., requires. We disagree with the court of appeals and reverse. Additionally, we remand for consideration of issues raised by Cynthia E. before the court of appeals which the court of appeals did not address.

The relevant facts are undisputed. In 1986, La Crosse County held Children in Need of Protection or Services (commonly referred to as CHIPS) hearings for Cynthia E.'s three children, Jamie L., Gregory L., and Seger E. A judge concluded that the three children were in need of protection or services and entered dispositional orders placing the children in foster homes.

Cynthia E. attended the dispositional hearings. During those hearings, the court orally informed Cynthia E. that her parental rights could be terminated if, after a cumulative period of one year or more, her children remained outside her home pursuant to a court order and she substantially neglected, willfully refused or was unable to remedy the conditions which had resulted in her children's removal and there was a substantial likelihood she would be unable to remedy those conditions in the future.

A social worker served Cynthia E. with a copy of the written dispositional orders. The social worker's "recommendations" were attached to the orders. Prefacing the recommendations was a statement telling Cynthia E. she had to meet the recommendations in order for her children to be returned to her. Also, attached to each order

222

was a "Warning to Parents," which summarized grounds for termination of parental rights under sec. 48.415, Stats.

At the time of the hearings in this case, sec. 48.415 contained six grounds for termination of parental rights: (1) abandonment; (2) continuing need of protection or services; (3) continuing parental disability; (4) continuing denial of periods of physical placement (known as continuing denial of visitation rights in 1986); (5) child abuse; and (6) failure to assume parental responsibility. The warning attached to each dispositional order paraphrased the statutory text of all of these grounds except failure to assume parental responsibility.

Two extension hearings were held in 1987. Cynthia E. received the same oral notice and the same warnings attached to written orders as she had received at the earlier dispositional hearings.

In 1988, La Crosse County petitioned for the termination of Cynthia E.'s parental rights; and in 1989, a jury trial was held. At the time of the trial, the children had been in foster care continuously since the dispositional hearings in 1986. The jury found the children were in continuing need of protection or services. This was the basis for the termination of Cynthia E.'s parental rights under sec. 48.415, Stats. *See* sec. 48.415(2), Stats. The court then found Cynthia E. unfit to be the parent of Jamie L., Gregory L., and Seger E. and entered an order terminating Cynthia E.'s parental rights.

Cynthia E. filed a motion challenging the termination on several grounds, including the validity of the written orders she had received. In order to terminate parental rights because a child is in continuing need of protection or services, sec. 48.415(2), Stats., requires, among other things, that "the child has been adjudged to be in need of protection or services and placed, or con-

tinued in a placement, outside his or her home pursuant to one or more court orders . . . containing the notice required by s. 48.356(2)." Section 48.415(2)(a), Stats. Section 48.356(2) requires that "any written order which places a child outside the home under [sec. 48.356(1)] shall notify the parent or parents of the information specified under [sec. 48.356(1)]." Part of the information which sec. 48.356(1) specifies is oral notice of "any grounds for termination of parental rights under s. 48.415 which may be applicable . . .." This is what Cynthia E. asserted the written orders lacked. Cynthia E. argued that the written dispositional and extension orders did not comply with sec. 48.356(2) because the "Warning to Parents" attached to those orders contained more grounds for termination than the specific ground that applied to her. The circuit court denied Cynthia E.'s motion.

Cynthia E. appealed from the final orders which granted the petitions to terminate her parental rights and which denied her motion for post-termination relief. She raised several issues, including the validity of the written orders. The court of appeals reversed on the issue of the written orders, concluding that they did not comply with sec. 48.356(2) because they "did not give 'specific' notice of the CHIPS grounds for termination of parental rights under 48.415(2), Stats.—the only 'applicable grounds' for termination . . .." *In the Interest of J.L., G.L., and S.E.,* Nos. 90–1990, 90–1991, 90–1992, 91–0148, 91–0149, 90–0150, unpublished slip op. at 9 (Ct. App. Dec. 12, 1991). Because the court of appeals reversed on the issue of the validity of the written orders, it did not address the other issues Cynthia E. had raised.

The issue in this case is whether the written dispositional and extension orders Cynthia E. received com-

plied with sec. 48.356(2), Stats. Resolving this issue requires us to interpret and apply sec. 48.356(2). Questions of statutory interpretation and the application of a statute to undisputed facts are questions of law, which we review without deference to the trial court or court of appeals. *City of Muskego v. Godec,* 167 Wis. 2d 536, 545, 482 N.W.2d 79 (1992).

The goal of interpreting a statute is to ascertain the legislature's intent. *In Interest of J.A.L.,* 162 Wis. 2d 940, 962, 471 N.W.2d 493 (1991). To find that intent, we first look to the statute's language. *Id.* If the statute's words unambiguously declare the legislature's intent, this court's duty is to apply that intent to the facts presented; we may not look beyond the statute's language to determine what that language means. *Id.* Consequently, we will only construe a statute if the statute is ambiguous. *Id.* A statute is ambiguous if well-informed persons could reasonably reach different conclusions concerning its meaning. *Girouard v. Jackson Circuit Ct.,* 155 Wis. 2d 148, 155, 454 N.W.2d 792 (1990). In construing an ambiguous statute, we examine the statute's history, context, subject matter, scope, and object. *J.A.L.,* 162 Wis. 2d at 962–63. We now turn to sec. 48.356(2), Stats.

Section 48.356(2), Stats., provides:

> **48.356 Duty of court to warn . . ..**
> **(2)** In addition to the notice required under sub. (1), any written order which places a child outside the home under sub. (1) shall notify the parent or parents of the information specified under sub. (1).

Well-informed people could not reasonably differ about what these words mean. Section 48.356(2) unambiguously requires that any written order which places a

225

child outside the home under sec. 48.356(1) notify the parent of the same information that sub. (1) specifies. To determine whether Cynthia E. received the notice sec. 48.356(2) requires, we must therefore refer to sub. (1).

Section 48.356(1), Stats., provides:

> **(1)** Whenever the judge orders a child to be placed outside his or her home because the child has been adjudged to be in need of protection or services under s. 48.345, 48.357, 48.363 or 48.365, the judge shall orally inform the parent or parents who appear in court of any grounds for termination of parental rights under s. 48.415 which may be applicable and of the conditions necessary for the child to be returned to the home.

The "information specified under sub. (1)" that sub. (2) requires written orders to contain consists of: (1) "any grounds for termination of parental rights under s. 48.415 which may be applicable" and (2) "the conditions necessary for the child to be returned to the home."

Cynthia E. concedes she received written notice of the second of these two requirements. The written orders contained the social worker's recommendations which were the conditions necessary for her children to be returned home. Cynthia E. argues, however, that the written orders did not contain the required notice of "any grounds for termination of parental rights under s. 48.415 which may be applicable . . .."

The guardian ad litem, *amicus* Wisconsin Council on Human Concerns (WCHC), and Cynthia E. argue about what these words mean and whether they are ambiguous. The guardian ad litem and WCHC contend that this language unambiguously allows a court to give notice of "any" grounds which "may be applicable."

They read the language as open-ended, allowing a judge to give notice of any grounds that might become applicable in the future. Cynthia E. maintains that the court of appeals properly construed this language to require, in her case, " 'specific' notice of the CHIPS grounds for termination of parental rights under sec. 48.415(2), Stats.—the only 'applicable grounds' for termination . . .." *J.L.*, Ct. App. unpublished slip op. at 9. We decline to reach the issues of whether sec. 48.356(1) is ambiguous and what sec. 48.356(1) means because all parties agree that Cynthia E. received proper oral notice under sub. (1), and, as we read sec. 48.356(2), Cynthia E. received proper notice in the written orders regardless of whose interpretation of sub. (1) we choose.

To comply with sec. 48.356(2), the written orders need only have contained the same information as the oral notice under sub. (1) contained. At the dispositional and extension hearings, the court orally informed Cynthia E. that her parental rights could be terminated if her children remained in continuing need of protection or services. Cynthia E. does not assert that this oral notice failed under sub. (1).

The written orders contained the same information. The "Warning to Parents" attached to the written dispositional and extension orders contained a summary of sec. 48.415(2), Stats., in language a lay person could understand. That warning told Cynthia E. she could lose her parental rights if her children remained in continuing need of protection or services. To be sure, the warning contained more. Besides containing notice of continuing need of protection or services, the warning contained notice of abandonment, continuing parental disability, continuing denial of physical placement, and child abuse. But, even accepting Cynthia E.'s argument that continuing need of protection or services is the

227

"specific" applicable ground required under sec. 48.356(1), Stats., the fact that the written orders contained more than that does not mean the orders did not comply with sec. 48.356(2). Section 48.356(2) does not say written orders shall contain the information specified in sub. (1) and nothing more. Because sec. 48.356(2) is unambiguous, we cannot look beyond its words and infer that the legislature would have wanted us to read it that way. *J.A.L.*, 162 Wis. 2d at 962.

In addition to the words of the statute, a practical reason supports interpreting sec. 48.356(2) as the guardian ad litem urges. The WCHC tells us that "the general practice in Wisconsin has been to provide parents with a list of all the potential grounds for involuntary [termination of parental rights] . . .." Affirming the court of appeals could mean that the adoption of many children who are in a position similar to that of Jamie L., Gregory L., and Seger E. would be delayed. These children would remain in the impermanence of foster care until the defects in written notice could be cured. This result would be contrary to the express policy of the Children's Code. *See* secs. 48.01(1)(g) ("To provide children in the state with permanent and stable family relationships."); 48.01(1)(gg) ("To promote the adoption of children into stable families rather than allowing children to remain in the impermanence of foster care."); 48.01(1)(gr) ("To allow for the termination of parental rights at the earliest possible time after rehabilitation and reunification efforts are discontinued and termination of parental rights is in the best interest of the child."). *See also* sec. 48.01(2), Stats.

Cynthia E. makes several arguments in support of the court of appeals' holding. First, Cynthia E. argues that legislative history supports interpreting sec. 48.356(2), Stats., as requiring written notice of only spe-

cific applicable grounds. Cynthia E. points to the evolution of sec. 48.356, arguing that through several amendments, the legislature has been moving toward requiring more specific notice to parents. She also argues that because the legislature has amended sec. 48.356 since the court of appeals decided *In re D.F.*, 147 Wis. 2d 486, 433 N.W.2d 592 (Ct. App. 1988), the legislature has ratified *D.F.'s* interpretation of sec. 48.356(2). Cynthia E. reads *D.F.* as holding that sec. 48.356(2) requires the written notice to contain only the specific applicable ground for termination. The legislature amended sec. 48.356(2) after the court of appeals decided *D.F.* (The respondent in *D.F.* did not file a petition for review.) Cynthia E. also points to a memo showing that the legislature knew about *D.F.* when it amended sec. 48.356(2). Cynthia E. concludes from all of this that the legislature has ratified the court of appeals decision in *D.F.* because the legislature amended sec. 48.356 after *D.F.* but did not amend the language *D.F.* interpreted. We reject this argument because sec. 48.356(2) is unambiguous; therefore, we cannot consider its legislative history. *See J.A.L.,* 162 Wis. 2d at 962. Moreover, we cannot use legislative history to create ambiguity. *Girouard,* 155 Wis. 2d at 156.

Cynthia E. also argues that *D.F.* correctly decided that sec. 48.356(2) requires notice of only the specific applicable ground for termination and that this case is a logical extension of *D.F.* In *D.F.,* four orders for two children fell within sec. 48.356(2)'s domain—two initial orders adjudging the children in need of protection or services and two extension orders. Attached to the initial order for one of the children was a form containing a copy of sec. 48.415, Stats. That may have sufficed as sec. 48.356(2) was worded at the time. *D.F.,* 147 Wis. 2d at 496. However, that form was signed by the father, not the appellant mother. *Id.* at 490. The other initial order

229

did not contain a copy of sec. 48.415. *Id.* at 496. Furthermore, the two extension orders not only failed to contain any reference to any applicable grounds for termination; they also failed to contain any notice of the conditions necessary for the children's return home. *Id.* at 497. Therefore, the written orders in *D.F.* failed for reasons other than a lack of specific notice; and we disagree with Cynthia E. about what *D.F.* means and whether this case logically follows from it. The court of appeals erred when it relied on dicta from *D.F.* to support requiring specific notice. *See J.L.*, Ct. App. unpublished slip op. at 6–7 (quoting *D.F.*, 147 Wis. 2d at 496, 498–99).

Cynthia E. also argues that giving a parent too much information in the written warning could confuse a parent. We do not intend to discount the importance of parental rights. *See In re Termination of Parental Rights to M.A.M.*, 116 Wis. 2d 432, 436–37, 342 N.W.2d 410 (1984). Parents facing CHIPS proceedings must often be distraught. However, Cynthia E. concedes she received actual notice. She makes no due process argument. The issue we review is not whether the procedure the Children's Code requires for terminating parental rights might confuse parents; it is simply whether the written notice complied with the legislature's clear directions in sec. 48.356(2), Stats. Accordingly, we reject Cynthia E.'s argument.

We hold that the written notices attached to the dispositional and extension orders complied with sec. 48.356(2), Stats.

There remains the question of what to do with the issues Cynthia E. raised before the court of appeals which the court of appeals did not address. In her court of appeals brief, besides raising the issue of the validity of the warnings attached to the written orders, Cynthia

E. raised issues of ineffectiveness of counsel, erroneous jury instructions, and unconstitutional mandatory finding of unfitness. The court of appeals decided the case by reversing on the warnings issue and thus did not address the other issues.

The guardian ad litem petitioned for review of the warnings issue. Cynthia E.'s response to the petition addressed that issue, but no others. When this court granted the petition for review, it entered an order stating:

> IT IS FURTHER ORDERED that in any brief filed in this court the parties shall not incorporate by reference any portion of their court of appeals' brief or petition for review or response; instead, any material in these documents upon which there is reliance should be restated in the brief filed in this court . . ..

In her brief to this court, Cynthia E. discussed the warnings issue, but did not discuss other issues. However, after filing her brief, Cynthia E. sent this court a letter to bring two recently decided cases to the court's attention. In that letter, counsel stated:

> [S]hould this Court reverse the Court of Appeals on the dispositive issue in its decision, i.e. the sufficiency of the warnings, this Court should recognize that C.E. raised an ineffective assistance of counsel argument before the Court of Appeals, following denial of her right to have an evidentiary hearing in the trial court. The appropriate remedy would be to remand to the trial court and/or to the Court of Appeals for consideration of the remaining issues, if this Court reverses on the warnings issue.

We agree that, given the facts of this case, it is appropriate to remand to the court of appeals. We write further to clarify the procedure respondents should fol-

low when the court of appeals has decided in their favor but has not addressed all the issues they raised and the respondent wants to raise one of those unaddressed issues before this court to support the court of appeals decision.

Once a case comes before this court, we have discretion to review "any substantial and compelling issue" the case presents. *Univest Corp. v. General Split Corp.,* 148 Wis. 2d 29, 39, 435 N.W.2d 234 (1989). *See also In Interest of Baby Girl K.,* 113 Wis. 2d 429, 448, 335 N.W.2d 846 (1983) (This court has the discretion to consider constitutional issues raised for the first time on appeal.). During oral argument in this case, when asked whether they would rely on their court of appeals briefs for the remaining issues if we reversed the court of appeals, both parties asked for the opportunity to file new briefs.

■

Nothing guarantees, of course, that this court will use its discretion to review an issue. What should respondents in Cynthia E.'s procedural position do to ensure they do not waive their right to review of an issue? They do not have to file a petition for cross-review. *State v. Johnson,* 153 Wis. 2d 121, 124, 449 N.W.2d 845 (1990). In fact, Cynthia E. has no "adverse decision" from which to cross-petition. *See* sec. (Rule) 809.62(7), Stats. *Cf. In re Marriage of Hommel v. Hommel,* 162 Wis. 2d 782, 795–96, 471 N.W.2d 1 (1991) (A party who does not file a petition for cross-review of a court of appeals decision may not raise arguments calling for the reversal of the court of appeals.); *Neely v. State,* 89 Wis. 2d 755, 279 N.W.2d 255 (1979). The proper way for a respondent to raise an issue before this court, if the issue would support the court of appeals decision and is an issue which the court of appeals did not address

232

because it found another issue to be dispositive, is to assert the issue in her brief to this court and fully discuss it. *Johnson,* 153 Wis. 2d at 124; *State v. Alles,* 106 Wis. 2d 368, 383–95, 316 N.W.2d 378 (1982). *See also generally Dandridge v. Williams,* 397 U.S. 471, 475–76 n.6 (1970); Robert L. Stern, *et al., Supreme Court Practice,* sec. 6.35 at 382–87 (6th ed. 1986) ("[I]t is also the general rule that a cross-appeal or a cross-petition is not necessary to enable a prevailing party 'to defend its judgment on any ground properly raised below whether or not that ground was relied upon, rejected, or even considered by the District Court or the Court of Appeals' . . . so long as it does not change the judgment." (citations omitted)); Robert L. Stern, *When to Cross-Appeal or Cross Petition—Certainty or Confusion?,* 87 Harv. L. Rev. 763 (1974). If a respondent in this procedural situation does not assert and fully discuss such issues, this court may in its discretion: (1) review the issue itself; (2) decide that respondent has waived the right to a review of the issue, *Johnson,* 153 Wis. 2d at 123; or (3) remand to the court of appeals or trial court for a decision on the issue. *Id.* at 126.

As noted before, given the facts of this case, it is appropriate to remand to the court of appeals for consideration of issues in Cynthia E.'s court of appeals brief which the court of appeals did not address.

*By the Court.*—The decision of the court of appeals is reversed, and the cause is remanded for further proceedings consistent with this opinion.