No. 98-029

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 52

298 Mont. 419

998 P. 2d 144

THE CITY OF MISSOULA,

Plaintiff, Appellant and Cross-Respondent,

v.

RODNEY L. ROBERTSON,

Defendant, Respondent and Cross-Appellant

APPEAL FROM: District Court of the Fourth Judicial District,

In and for the County of Missoula,

The Honorable John W. Larson, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Joseph P. Mazurek, Montana Attorney General, Tammy K. Plubell, Assistant Montana Attorney General; Jim Nugent, Missoula City Attorney, Gary L. Henricks, Deputy City Attorney, Missoula, Montana

For Respondent:

Steve Fletcher, Bulman Law Associates, Missoula, Montana

Submitted on Briefs: June 3, 1999

Decided: March 2, 2000

Filed:

_____

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1.City of Missoula (City) appeals from an opinion and order issued by the Fourth Judicial District Court, Missoula County, which remanded this case to Municipal Court for entry of dismissal. Rodney L. Robertson (Robertson) cross-appeals on alleged errors by the Municipal Court.

¶2.We affirm in part, reverse in part, and remand for further proceedings.

## Factual and Procedural Background

¶3.On July 7, 1995, the State charged Robertson with two counts of criminal mischief and driving under the influence of alcohol (DUI).

¶4.Earlier that night, shortly after 10 p.m., Missoula police officer Robert Heinle (Heinle) responded to a 9-1-1 report that a male suspect was vandalizing a vehicle and a home on the north side of town. While en route to the home of Teresa and James Robbins, Heinle was informed by a police dispatcher that the suspect had left the scene and was driving a white Chevrolet Blazer with licence plate number AZ2MT. Heinle identified the vehicle driving approximately one-half mile away from the scene of the alleged crime. Heinle stopped the driver.

¶5.The driver, Robertson, appeared "agitated" according to Heinle, and commenced discussing the vandalism in question. Heinle could smell a strong odor of alcohol on Robertson's breath, and noticed that Robertson's speech was slow, deliberate and slurred. Once out of the vehicle, Robertson had difficulty maintaining his balance, according to Heinle. Robertson would not cooperate with Heinle's attempts to administer field sobriety tests at that time, apparently due to agitation or anger over what had minutes ago

transpired at the Robbins' residence.

¶6.Heinle was then contacted by another officer, who was at the scene of the alleged vandalism. The officer had discussed the incident with the Robbins, and had observed that their car windshield had been smashed and their front door damaged from the suspect's attempts to gain entry. The officer instructed Heinle to arrest Robertson for criminal mischief.

¶7.At the Missoula Police Department station, Heinle successfully administered three field sobriety tests: the horizontal gaze nystagmus (HGN) test, the walk and turn test, and the one-legged stand test. After sufficiently failing each for the purpose of establishing probable cause, Robertson was arrested for driving under the influence. He then refused to perform the three tests again while being video taped. Robertson also refused to submit to a breathalyser test.

¶8.Robertson pled not guilty to the charges. A series of motions for continuance over the next two years resulted in numerous delays in this matter going to trial. Robertson filed a motion for continuance on September 27, 1995, so that he could secure counsel. The motion was granted and the September 29, 1995 trial date was moved to November 28, 1995. This matter was then delayed, awaiting a ruling from this Court on another case involving a relevant issue. A new trial date was eventually set for October 17, 1996. Robertson moved for a continuance on October 9, and trial was rescheduled for December 27, 1996. The City then moved to continue on December 20, 1996, due to a schedule conflict with the testifying officer. Trial was again rescheduled, this time for April 24, 1997. Robertson moved to continue on April 16, 1997. Trial was again moved, this time to June 12, 1997. Robertson again moved for a continuance on May 20, 1997, claiming he had recently moved to San Diego, California, and needed to make arrangements for his return to Montana for trial. This motion was granted. Trial was rescheduled for July 24, 1997.

¶9.On July 3, 1997, Robertson again moved for a continuance for the same reasons--that he needed to make travel arrangements. The motion suggested that, via a phone conference, the parties and the court could work out a new trial date. This motion was denied shortly before the trial date. Unable to make travel arrangements, the trial proceeded without Robertson appearing in court.

¶10.At trial in Missoula Municipal Court on July 24, 1997, the two charges for criminal

mischief were dismissed. The key witnesses, the Robbins, apparently had moved to Idaho by the time of trial, and were unavailable to testify. The trial, in which only Officer Heinle testified, proceeded under the one charge of DUI. After the state's case in chief, counsel for Robertson moved for a directed verdict. This motion was denied. The jury found Robertson guilty of driving under the influence of alcohol. Robertson appealed to district court.

¶11.Following briefing by both parties, the District Court entered an order on November 18, 1997, in which it remanded the matter to Municipal Court for entry of dismissal. Specifically, the court determined that the arresting officer did not have a "sufficient particularized suspicion to justify the investigative stop for DUI." Thus, the District Court concluded that the Municipal Court erred in denying Robertson's motion for a directed verdict.

¶12.Additionally, the District Court determined that the Municipal Court did not abuse its discretion in denying Robertson's July 3, 1997 motion for continuance. Finally, the court determined that aside from one issue regarding attorney's fees, the "remaining issues . . . do not need to be addressed given the dispositive impact of the second issue and are not addressed in this opinion." Robertson had asserted, on appeal to District Court, that the Municipal Court had erred in denying his motion to offer evidence of the breathalyser machine's unreliability, and in allowing testimony regarding the HGN test results. He also asserted that § 61-8-404(2), MCA, which declares that evidence of a person's refusal to take a sobriety test is admissible, violates the separation of powers doctrine of the U.S. and Montana constitutions.

¶13.The State appeals the District Court's order remanding for dismissal. Robertson cross-appeals, raising the three issues not addressed by the District Court as well as whether the District Court abused its discretion in affirming the Municipal Court's denial of Robertson's July 3, 1997 motion to continue.

## Standard of Review

¶14.This Court reviews legal conclusions to determine whether the district court's interpretation of the law is correct. *Bi-Lo Foods, Inc. v. Alpine Bank, Clifton*, 1998 MT 40, ¶ 14, 287 Mont. 367, ¶ 14, 955 P.2d 154, ¶ 14. The scope of a district court's review is a question of law because its power to review a municipal court's decision is provided pursuant to § 3-6-110, MCA. *See Quick v. Bozeman School Dist. No. 7*, 1999 MT 175, ¶

16, 295 Mont. 240, ¶ 16, 983 P.2d 402, ¶ 16. We review evidentiary rulings to determine whether the court abused its discretion. *State v. Fenton*, 1998 MT 99, ¶ 11, 288 Mont. 415, ¶ 11, 958 P.2d 68, ¶ 11. Our review of questions involving constitutional law is plenary. *State v. Schnittgen* (1996), 277 Mont. 291, 295, 922 P.2d 500, 503. A court's resolution of an issue involving a question of constitutional law is a conclusion of law which we review to determine whether the conclusion is correct. *Schnittgen*, 277 Mont. at 295-96, 922 P.2d at 503. All statutes carry with them a presumption of constitutionality, and this Court construes statutes narrowly to avoid an unconstitutional interpretation if possible. *State v. Nye* (1997), 283 Mont. 505, 510, 943 P.2d 96, 99. This Court also reads statutes as a whole, and terms used in the statute should not be isolated from the context in which they were used by the Legislature. *Nye*, 283 Mont. at 510, 943 P.2d at 99.

## Discussion

¶15. Preliminary to the following, City urges this Court to refrain from reviewing three of the five issues raised in Robertson's cross-appeal. All three were raised, but not addressed, on appeal to the District Court, which found another issue dispositive. Thus, City contends that because the District Court did not rule on these issues, they are not properly before this Court. The three issues are:

*1. Did the Municipal Court abuse its discretion by prohibiting Robertson from challenging the reliability of the breathalyser machine as a basis for his refusal to submit to a breathalyser test?*

**2. Did the Municipal Court err in admitting the officer's testimony regarding the horizontal gaze nystagmus (HGN) test results without expert testimony establishing the test's reliability?**

*3. Does § 61-8-404(2), MCA, in determining that proof of a person's refusal to take a sobriety test is "admissible in any criminal action or proceeding," violate the separation of powers doctrine of the U.S. and Montana constitutions?*

¶16. The three issues in question are not based on an adverse decision by the District Court. Therefore Robertson's "cross-appeal" of these issues is something of a misnomer. Rather, Robertson's cross-appeal anticipates that should we reverse the decision of the District Court, we should subsequently review other alleged errors made by the Municipal Court and nevertheless rule in his favor. In essence, Robertson is providing this Court with alternatives for upholding the District Court's order of remand and dismissal. Before proceeding, we must expressly rule on whether our review of these issues is correct in this

instance.

¶17.Our decision in *City of Missoula v. Asbury* (1994), 265 Mont. 14, 20, 873 P.2d 936, 939, similarly dealt with a matter originating in municipal court. Pursuant to § 3-6-110, MCA, cases proceed on appeal from municipal court to District Court similarly to matters appealed from district court to this Court. In *Asbury*, we applied our long-standing rule that this Court will not address an issue not presented to the trial court. Thus, we held that an issue was not properly before this Court due to the fact that the appellants had failed to raise that issue at the first appellate level in district court. *Asbury*, 265 Mont. at 20, 873 P.2d at 939.

¶18.Here, however, the three issues in question were raised during the Municipal Court proceedings as well as on appeal to the District Court. There, the issues were briefed by both parties. Due to the fairly unique two-tier appellate review in this matter, relevant Montana authority, understandably, was not presented by the parties. Upon further review, we are inclined to look to other jurisdictions and well-founded authorities for guidance.

¶19.The established doctrine governing appeals to all appellate courts, including the U.S. Supreme Court, is that a party must cross-appeal if the party seeks to change any part of the judgment below. *See* Robert L. Stern et al., Supreme Court Practice § 6.35 (7th ed. 1993); *Federal Energy Administration v. Algonquin SNG, Inc.* (1976), 426 U.S. 548, 560, 96 S.Ct. 2295, 2302, 49 L.Ed.2d 49 n.11 (precluding modification of judgments by prevailing party absent cross-petition). Furthermore, unlike those federal courts that hold that the initial notice of appeal invokes jurisdiction over the entire case, this Court follows the rule that it only has jurisdiction over those issues addressed in the appeal or a properly filed cross-appeal. *See Joseph Eve & Co. v. Allen* (1997), 284 Mont. 511, 514, 945 P.2d 897, 899 (rejecting review of respondent's cross-appeal issues where no notice of cross-appeal was filed). Thus, Robertson properly cross-appealed the District Court's adverse decision that the Municipal Court did not abuse its discretion by denying his July 3, 1997 motion for continuance.

¶20.Conversely, it is also the general rule that a cross-appeal is not necessary to enable a prevailing party "to defend its judgment on any ground properly raised below whether or not that ground was relied upon, rejected, or even considered by the District Court or the Court of Appeals." *Washington v. Yakima Indian Nation* (1979), 439 U.S. 463, 478, 99 S. Ct. 740, 750, 58 L.Ed.2d 740 n.20. Thus, it has been determined by the Wisconsin Supreme Court that the "proper way for a respondent to raise an issue before this court, if

the issue would support the court of appeals decision and is an issue which the court of appeals did not address because it found another issue to be dispositive, is to assert the issue in her brief to this court and fully discuss it." *In Interest of Jamie L.* (Wis. 1992), 493 N.W.2d 56, 63.

¶21.The procedural sequence in *Jamie L.* is nearly identical to the one presented here. A mother's parental rights were terminated by a circuit court, which also denied the mother's motion for post-termination relief. The mother appealed to a state court of appeals, and raised several issues. The court of appeals reversed on one of the issues, and "did not address the other issues [the mother] had raised." *Jamie L.*, 493 N.W.2d at 59. On appeal to the Wisconsin Supreme Court, however, the mother did not brief the other issues, but instead sent a letter to the court bringing the other issues that she had raised on appeal in the lower court to the Supreme Court's attention. *Jamie L.*, 493 N.W.2d at 62. Based on an earlier decision, the court stated that "[i]f a respondent in this procedural situation does not assert and fully discuss such issues, this court may in its discretion: (1) review the issue itself; (2) decide that respondent has waived the right to a review of the issue . . .; or (3) remand to the court of appeals or trial court for a decision on the issue." *Jamie L.* 493 N. W.2d at 63. Due to the lack of adequate briefing, the court determined that a remand was necessary for consideration of the other issues raised by the mother. *Jamie L.*, 493 N.W.2d at 63.

¶22.As applied to the procedural circumstances here, we find the foregoing rules persuasive. The three issues raised by Robertson that the District Court declined to address undoubtedly "support" the District Court's decision reversing the Municipal Court's judgment. While urging us to not review the issues in question, City nevertheless provided lengthy discussion on each in its reply brief. We conclude that Robertson has sufficiently asserted the issues, and both parties have fully briefed each one.

¶23.Accordingly, we conclude that it is proper for this Court to review all issues raised by Robertson, which will be discussed below under issues three, four, and five.

### *Issue 1.*

***Did the District Court exceed the scope of its appellate review power when it considered an issue that had neither been raised nor decided in municipal court?***

¶24.The District Court remanded this matter to Municipal Court for dismissal based on its

determination that the arresting officer did not have a "sufficient particularized suspicion to justify the investigative stop for DUI." The court determined that Robertson's motion for a directed verdict was "more properly focussed on the sufficiency of the basis for the investigative stop . . . ." Thus, the District Court concluded that the Municipal Court erred in denying Robertson's motion.

¶25.City contends that the issue of whether the officer had "sufficient particularized suspicion" was never raised or ruled on in the Municipal Court proceedings, and therefore the District Court clearly exceeded the scope of its appellate review in making its determination. City further contends that even if the District Court could properly address this issue, particularized suspicion has no relevant bearing on this case, and is therefore immaterial. In both respects, we agree.

¶26.When a District Court exercises its power of appellate review, it must refrain from deciding issues not properly raised or objected to in the court below. For example, pursuant to § 3-6-110(1), MCA, "[a] party may appeal to district court from a municipal court judgment or order. The appeal is confined to review of the record and questions of law, subject to the supreme court's rulemaking and supervisory authority." Pursuant to § 46-20-104(2), MCA, upon appeal from judgment, "the court may review the verdict or decision and any alleged error objected to which involves the merits or necessarily affects the judgment." Furthermore, "[f]ailure to make a timely objection during trial constitutes a waiver of the objection except as provided in § 46-20-701(2)." This latter statute permits claims on appeal to proceed that have resulted from suppression of evidence and newly discovered facts or rights.

¶27.Thus we have held that this Court will not address an issue not properly presented to the trial court. *See State v. Herrera*, 1998 MT 173, ¶ 17, 289 Mont. 499, ¶ 17, 962 P.2d 1180, ¶ 17. This same rule applies to a district court in exercising its powers as an appellate court pursuant to § 3-6-110(1), MCA. *See Asbury*, 265 Mont. at 20, 873 P.2d at 939.

¶28.Robertson did not raise the issue of particularized suspicion at trial or on appeal to District Court. Specifically, Robertson challenged the Municipal Court's denial of his motion for a directed verdict on two grounds: 1) the City had failed to produce two primary witnesses, and therefore his constitutional right to confront witnesses against him was denied; and 2) the State had not sustained the necessary burden of proof to support the conviction. Specifically, Robertson claimed that the State offered no evidence of improper

driving, the results of the three tests were unreliable, the video tape was inconclusive, and, subsequently, the officers lacked probable cause to arrest Robertson for DUI.

¶29.Likewise, City's brief submitted to the District Court on appeal did not raise particularized suspicion as an issue. Rather, City mentioned particularized suspicion in describing the events that occurred on the night of July 7, 1995: that Officer Heinle, based on a particularized suspicion that Robertson had been involved in the vandalism in question, stopped Robertson one-half mile from where the call to 9-1-1 originated. Only after stopping Robertson did Heinle become aware that Robertson had been drinking. As Robertson correctly asserts, Heinle testified that he did not observe any problem in Robertson's driving at that time. Heinle testified, however, that he had in fact stopped Robertson based on the 9-1-1 report of vandalism. Even then, Robertson was not arrested and taken to the Missoula Police Department station for DUI--due in part to Robertson's own lack of cooperation in submitting to field sobriety tests.

¶30.Robertson has never once raised, or objected to, or in any manner challenged the fact that Missoula police had a legitimate particularized suspicion on July 7, 1995, that Robertson was involved in the reported vandalism. Likewise, Robertson has not once suggested, nor does any evidence indicate, that the investigatory stop in question was made for any other purpose than as a response to the reported vandalism.

¶31.In making its determination, the District Court utterly confused the facts of this case. In concluding that the arresting officer did not have a "sufficient particularized suspicion to justify the investigative stop for DUI" the court apparently assumes that the stop was made for the purpose of investigating a DUI. This assumption is simply wrong and takes both Robertson's and City's arguments out of context. The uncontested facts clearly show that Heinle responded to a 9-1-1 call reporting a vandalism in progress. He was given an accurate description of Robertson's vehicle and the license plate number. Then, one-half mile from where the incident occurred, Heinle observed this vehicle and pulled it over.

¶32.We conclude that the District Court abused its discretion by exceeding the scope of its appellate review, and in doing so incorrectly concluded that Heinle did not have a sufficient particularized suspicion to stop Robertson on the night of July 7, 1995. The order of the District Court dismissing the municipal court judgment against Robertson is therefore reversed.

**Issue 2. Did the Municipal Court abuse its discretion in denying Robertson's motion for**

## *continuance, resulting in the trial proceeding in absentia?*

¶33.Robertson claims that the Municipal Court abused its discretion when it failed to grant his July 3, 1997 motion for continuance and, subsequently, the District Court erred when it affirmed this decision. Based on its review of this matter on appeal, the District Court determined that rescheduling the trial dates upon motion was within the court's discretion and that the "final denial of the continuance was not an abuse of discretion."

¶34.This Court reviews legal conclusions to determine whether the district court's interpretation of the law is correct. *Bi-Lo Foods*, ¶ 14. Here, the District Court properly employed the abuse of discretion standard when it reviewed the Municipal Court's denial of Robertson's July 3, 1997 motion for continuance. An abuse of discretion occurs when a court acts arbitrarily without conscientious judgment or exceeds the bounds of reason resulting in substantial injustice. *Campbell v. Canty*, 1998 MT 278, ¶ 35, 291 Mont. 398, ¶ 35, 969 P.2d 268, ¶ 35.

¶35.We agree with City as well as the District Court that Robertson had only himself to blame for not appearing at his jury trial. The July 24, 1997 trial date--over two years after the State filed charges--was in fact arranged pursuant to Robertson's prior motion for continuance in May for the very same reason: to permit him to make travel arrangements after moving to California. Counsel knew of the July 24 trial date well in advance. Whether Robertson's July motion for continuance was granted or denied, Robertson had ample time to arrange for his appearance in Montana, and certainly had time to prepare for his defense. We conclude that it was Robertson, not the court, who "forced the trial to go forward in absentia."

¶36.Further, Robertson has failed to cite any substantive authority, or otherwise argue how, specifically, the District Court's conclusion was incorrect, or how the Municipal Court acted arbitrarily without conscientious judgment or exceeded the bounds of reason resulting in substantial injustice. We therefore conclude that the District Court correctly determined that the Municipal Court, having granted numerous motions of continuance in this matter, did not abuse its discretion in denying Robertson's July 3, 1997 motion to continue.

## *Issue 3.*

## *Did the Municipal Court abuse its discretion by prohibiting Robertson from challenging*

*the reliability of the breathalyser machine as a basis for his refusal to submit to a breathalyser test?*

¶37.As explained above, the District Court did not rule on this issue. With this issue fully discussed and briefed by both parties, we will review the Municipal Court's evidentiary ruling to determine whether the court abused its discretion. *See Fenton*, ¶ 11.

¶38.Robertson argues that the Municipal Court abused its discretion, and therefore committed reversible error, when it refused to permit him to challenge at trial the reliability of the breathalyser machine involved in this matter. A generous translation of his argument is that he refused to submit to a breathalyser test based on his genuine concern that the machine was unreliable. Thus, rather than take more than one breathalyser test to show inconsistent results, Robertson chose not to take even one test on principle.

¶39.The court accordingly refused to accept rebuttal evidence pertaining to the particular breathalyser machine's reliability. The court reasoned that although Robertson's refusal was offered into evidence, there was no test given and therefore no unreliable test results to challenge.

¶40.We conclude that Robertson's argument is without merit. Namely, Robertson failed to support his assertions on this issue with citations to any authority. We have made it clear on numerous occasions that we will decline to address an issue when an appellant fails to cite to supporting authority. *See*, *e.g.*, *Rieman v. Anderson* (1997), 282 Mont. 139, 147, 935 P.2d 1122, 1126-27 (citations omitted). Further, the reason for this omission of authority is patently clear. The law in Montana is that evidence of a person's refusal to submit to a breathalyser test is admissible, in accordance with § 61-8-404(2), MCA. *See City of Missoula v. Forest* (1989), 236 Mont. 129, 133-34, 769 P.2d 699, 701-702; *State v. Jackson* (1983), 206 Mont. 338, 348, 672 P.2d 255, 260 (concluding that Montana's constitutional guaranty against self-incrimination afforded no greater protection than the federal constitution). In *Jackson* and subsequent decisions we have consistently held that the results of a breathalyser test, as well as a defendant's refusal to submit to the breathalyser test, are communications not protected by the Fifth Amendment of the federal constitution or Article II, Section 25, of the Montana Constitution.

¶41.Aside from the foregoing, Robertson did not even take the breathalyser test in question, and therefore had no legitimate grounds to challenge whether the machine in

question, the Intoxilizer 5000, produces reliable results. This is not to say that the inference drawn from a defendant's refusal to take a breathalyser test cannot be challenged at trial. *See, e.g., State ex rel. Baumert v. Municipal Court of Phoenix* (Ariz. 1978), 579 P.2d 1112 (failure to take test was due to defendant's asthma). Robertson's ploy here, however, makes no sense in terms of relevancy under the facts of this case, and cannot be supported by any relevant authority.

¶42. Therefore, the Municipal Court, in its discretion, would not permit Robertson to introduce evidence challenging the breathalyser machine's reliability. We conclude that the court did not abuse its discretion.

### Issue 4.

### Did the Municipal Court err in admitting the officer's testimony regarding the horizontal gaze nystagmus (HGN) test results without expert testimony establishing the test's reliability?

¶43. The Municipal Court permitted an officer to testify regarding the HGN test results over objection from Robertson's counsel that such evidence requires a foundation of expert testimony establishing reliability. The testifying officer conceded, in fact, that he lacked the expertise to testify as to the test's scientific reliability. Robertson contends that allowing the officer's testimony regarding the test results was reversible error. As with the foregoing issue, we will review the Municipal Court's evidentiary ruling to determine whether the court abused its discretion. *Fenton*, ¶ 11.

¶44. In *Hulse v. State*, 1998 MT 108, ¶ 72, 289 Mont. 1, ¶ 72, 961 P.2d 75, ¶ 72, this Court held that in order to lay the proper foundation for admitting the results of the HGN test,[1] the State, in addition to showing that the test was properly administered, must also establish a scientific basis for the reliability of the test results. We stated in *Hulse* that an expert explaining "the correlation between alcohol consumption and nystagmus, the underlying scientific basis of the HGN test" must be offered prior to the introduction into evidence of HGN test results. *Hulse*, ¶ 72. This holding served to clarify our prior decision in *State v. Clark* (1988), 234 Mont. 222, 762 P.2d 853, which implied, but did not expressly hold, that expert testimony regarding scientific reliability was required to establish a proper foundation. *See Clark*, 234 Mont. at 227-28, 762 P.2d at 857.

¶45. This matter was tried, as well as reviewed on appeal by the District Court, prior to our

decision in *Hulse*. Because we give retroactive effect to judicial decisions, *Hulse* is applicable in the case *sub judice* although it was not available to either court. *See State v. Steinmetz*, 1998 MT 114, ¶ 10, 288 Mont. 527, ¶ 10, 961 P.2d 95, ¶ 10.

¶46.Pursuant to our holding in *Hulse*, we agree with Robertson that the Municipal Court abused its discretion in permitting the officer to offer the HGN results into evidence without the State first establishing the requisite scientific basis for the test's reliability. However, we also concluded in *Hulse* that, although the district court abused its discretion by admitting the evidence without a proper foundation, it was harmless error. In determining harmless error, we have often relied on the "overwhelming evidence" rule. *See State v. Berosik*, 1999 MT 238, ¶ 21, ___ Mont. ___, ¶ 21, 988 P.2d 775, ¶ 21. This Court has noted that the federal harmless error rule and Montana's harmless error rule are essentially the same, and that in either case overwhelming evidence of a defendant's guilt can render harmless a district court's error. *See State v. Fuhrmann* (1996), 278 Mont. 396, 407,

925 P.2d 1162, 1169. *See also Hulse*, ¶ 73 (identifying additional evidence of bloodshot eyes, smell of alcohol, lack of coordination, and failing two other field sobriety tests).

¶47.Similarly, other overwhelming evidence of Robertson's condition was presented to the jury in this matter. Evidence of Robertson failing two other sobriety tests was uncontested. A station house video tape was admitted into evidence and played for the jury wherein Robertson refused to perform sobriety tests after having already failed them. Likewise, he refused to submit to a breathalyser. Identical to the testimony in *Hulse*, Officer Heinle testified he smelled alcohol on Robertson's breath, Robertson's speech was slurred, and he displayed an obvious lack of balance after getting out of his vehicle.

¶48.Section 46-20-701(1), MCA, provides that "[a] cause may not be reversed by reason of any error committed by the trial court against the convicted person unless the record shows that the error was prejudicial." We agree with City that Robertson has failed to show that he was prejudiced by the introduction of this evidence. We therefore conclude that, in light of the overwhelming evidence offered by the State, the introduction into evidence of the HGN test was harmless error.

### Issue 5.

### *Does § 61-8-404(2), MCA, in determining that proof of a person's refusal to take a*

*sobriety test is "admissible in any criminal action or proceeding," violate the separation of powers doctrine of the U.S. and Montana constitutions?*

¶49.Robertson claims that the Legislature, by enacting § 61-8-404(2), MCA,[2] unconstitutionally infringes upon the function of Montana courts in making judicial determinations regarding the admissibility of evidence. In other words, the Legislature, by enacting § 61-8-404(2), MCA, has mandated that a person's refusal to submit to a blood or breath test while under arrest *must* be admitted into evidence. This, Robertson claims, usurps the sole, exclusive power of the courts to rule on the admissibility of evidence, and impermissibly violates the separation of powers doctrine of the U.S. and Montana constitutions.

¶50.Consequently, Robertson contends that the statute improperly "shifts the burden of proof to the defendant to establish that the refusal was not a reflection of guilt," which directly conflicts with § 46-16-204, MCA. Under § 46-16-204, MCA, a "defendant in a criminal action is presumed to be innocent until the contrary is proved, and in case of a reasonable doubt whether the defendant's guilt is satisfactorily shown, the defendant must be found not guilty."

¶51.Robertson's contentions fail on several grounds.

¶52.Pursuant to Article III, Section 1, the Montana Constitution provides for a "separation of powers" doctrine which is similarly expressed by Articles I through III, of the U.S. Constitution:

The power of the government of this state is divided into three distinct branches-- legislative, executive, and judicial. No person or persons charged with the exercise of power properly belonging to one branch shall exercise any power properly belonging to either of the others, except as in this constitution expressly directed or permitted.

Ultimately, under Rule 104, M.R.Evid., "the admissibility of evidence shall be determined by the court." *See also In re Marriage of Njos* (1995), 270 Mont. 54, 61, 889 P.2d 1192, 1196 (stating that determination of the admissibility of evidence is within the discretion of the trial court; the court is not guided by fixed rules, but must consider the nature of the evidence and the circumstances of a particular case). This rule unconstitutionally conflicts, Robertson contends, with § 61-8-404(2), MCA, which provides:

If the person under arrest refused to submit to one or more tests as provided in this section, *proof of refusal is admissible in any criminal action or proceeding* arising out of acts alleged to have been committed while the person was driving or in actual physical control of a vehicle upon the ways of this state open to the public, while under the influence of alcohol, drugs, or a combination of alcohol and drugs (emphasis added).

¶53. It is well-settled law in Montana that the Legislature has the power to prescribe new and alter existing rules of evidence or to prescribe methods of proof. *See State v. Lewis* (1923), 67 Mont. 447, 216 P. 337. In *Lewis*, this Court stated that "[t]here can be no doubt respecting the general power of the Legislature to prescribe rules of evidence to be observed in judicial tribunals, it being restricted only by constitutional limitations and guaranties." *Lewis*, 67 Mont. at 452, 216 P.2d at 339. Thus, the Legislature routinely passes laws, many as a matter of public policy, that determine whether certain kinds of evidence is admissible or inadmissible.

¶54. One obvious example of our Legislature prescribing admissibility is found under § 45-5-511(2), MCA, which states that "[n]o evidence concerning the sexual conduct of the victim is admissible in prosecutions under this part except evidence of the victim's past sexual conduct with the offender or evidence of specific instances of the victim's sexual activity to show the origin of semen, pregnancy, or disease which is at issue in the prosecution." *See also* § 2-6-102(2), MCA (access to public writings); § 7-15-4259(3), MCA (eminent domain proceedings); § 20-25-513, MCA (emergency entry of college student's room); § 26-1-608(1), MCA (photographs of stolen property); § 26-1-704, MCA (voluntary claim payments); § 26-1-813(3), MCA (mediator's reports); § 27-1-221(7), MCA (liability for punitive damages); § 27-1-308(3), MCA (collateral sources of recovery); § 27-1-705(3), MCA (joint and several liability); § 27-6-704(2), MCA (medical legal panel decisions); § 30-1-205(6), MCA (course of dealing and usage of trade); § 46-18-249(2), MCA (restitution for victim of crime); § 50-70-107(3), MCA (physician's report of occupational disease); § 72-2-1017(2), MCA (honorary trusts); § 81-22-301(2)(b), MCA (dairy product tests).

¶55. In making his separation of powers argument, Robertson relies on *State v. Long* (Wash. 1989), 778 P.2d 1027. The holding in *Long*, however, supports, in part, a position exactly opposite to the one claimed by Robertson, and in fact mirrors Montana law. The *Long* court explained:

Since the right to refuse to submit to a breath test is a matter of legislative grace, the

Legislature may condition that right by providing that a refusal may be used as evidence in a criminal proceeding. It has now done so. This is not to say, however, that depending on the facts of the particular case, the trial court may not exclude such evidence if the probative value of such evidence is found to be substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury.

*Long, 778 P.2d at 1030-31 (footnotes omitted). We agree with this part of the Washington court's analysis, and similarly conclude that by no means does our own statute usurp all discretion from the judiciary in making sound decisions regarding the admissibility of evidence. Stating that a person's refusal to submit to a sobriety test is "admissible" is not the same as stating the refusal must be allowed into evidence. Rather, "admissible," under § 61-8-404(2), means in its ordinary sense that such evidence may be admitted. Rule 402, M.R.Evid., broadly states that "[a]ll relevant evidence is admissible, except as otherwise provided by constitution, statute, these rules, or other rules applicable in the courts of this state." Thus, "admissible" evidence may be excluded for any number of reasons, including those under Rule 403, M.R.Evid., which provides:*

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

¶56.As for his claim of improper burden shifting, Robertson contends that it is City's burden to establish with foundational evidence that his refusal to submit to a breathalyser demonstrated a "consciousness of guilt," rather than his to prove that it did not. Therefore, Robertson contends that § 61-8-404(2), MCA, allows City to argue that an inference of a "consciousness of guilt" can be drawn from the evidence of his refusal, which in turn relieves City to some extent of its burden to prove the offense of DUI "beyond a reasonable doubt" as required by § 46-16-204, MCA.

¶57.Again, Robertson relies on *Long*. The Washington statute in question in *Long*, which is virtually identical to Montana's, was similarly challenged on the ground that any inference or speculation of guilt could not be drawn from the evidence of refusal. The Washington State legislature had, in fact, excised language from the statute that had expressly prohibited "speculation as to the reason for the refusal." *Long*, 778 P.2d at 1029. Without such restrictive language, the Washington court concluded that "[t]he legislative determination that refusal evidence is relevant and fully admissible to infer guilt or innocence thus now seems clear." *Long*, 778 P.2d at 1030.

¶58. While that may be the Washington Court's interpretation of its statute, we are not compelled to interpret Montana's statute in the same fashion. Like Washington's statute, the Montana statute Robertson challenges, § 61-8-404(2), MCA, does not expressly provide, or in any manner address, whether an inference of guilt may be drawn from the evidence of a person's refusal to submit to a blood or breath test. Certainly, if it were our Legislature's intention that there be such an inference, appropriate language to that effect could have been included in the statute. For example, § 61-8-401(4)(c), MCA, expressly provides that "it may be inferred that the person was under the influence of alcohol" based on the evidence that the person's blood alcohol concentration was 0.10 or more. To the contrary, however, § 61-8-404(2), MCA, merely provides that "proof of refusal is admissible . . . ."

¶59. As Robertson contends, however, an inference of guilt from the "proof of refusal" might be injected into the trial via the arguments of counsel (or, presumably, also via testimony or jury instructions). Nevertheless, if an inference of "consciousness of guilt" from the "proof of refusal" is injected into the trial in this manner, it cannot be said that it is because the Legislature adopted § 61-8-404(2), MCA. To the contrary, it is because the attorneys, the witnesses, or the trial court raised the inference to the jury. The accused's remedy under such circumstances is to object to the inference being argued, raised, or instructed upon and to allow the trial court the opportunity to rule, one way or the other, on the claim of error thus presented.

¶60. Therefore, returning to Robertson's separation of power argument, we hold that Montana's Legislature, in enacting § 61-8-404(2), MCA, did not unconstitutionally exercise power held exclusively by Montana courts in making judicial determinations regarding the admissibility of evidence.

¶61. Accordingly, this case is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

/S/ JAMES C. NELSON

We Concur:

/S/ WILLIAM E. HUNT, SR.

/S/ JIM REGNIER

## /S/ TERRY N. TRIEWEILER

## /S/ W. WILLIAM LEAPHART

1. As we explained in *Hulse*, nystagmus is the involuntary jerking of the eyeball resulting from the body's attempt to maintain balance and orientation. Nystagmus may be aggravated by central nervous system depressants such as alcohol or barbiturates. Furthermore, the inability of the eyes to maintain visual fixation as they are turned to the side is known as horizontal nystagmus. Thus, the test is conducted by instructing a person to focus on an object, such as a pen, while the officer moves the object back and forth horizontally, and observes the person's eye movements. *See generally Hulse*, ¶¶ 66-68.

2. Robertson incorrectly cites to the relevant statute as § 61-8-402(2), MCA, which governs when an officer may administer a sobriety test. We will presume, for the sake of Robertson's argument here, that he in fact intended to properly cite § 61-8-404(2), MCA, which governs the admissibility of "refusal" evidence.