IN RE the TERMINATION OF PARENTAL RIGHTS OF ANTHONY C. AND JOSEPH C., Persons Under the Age of 18,

MARINETTE COUNTY and Marinette County Department of Human Services, Petitioners-Appellants,

v.

TAMMY C. and Anthony C., Respondents-Respondents.

Supreme Court

*No. 97–2946. Oral argument February 19, 1998.—Decided June 19, 1998.*

(On bypass from the court of appeals.)

(Also reported in 579 N.W.2d 635.)

For the petitioners-appellants there were briefs (in the Court of Appeals) by *Chester C. Stauffacher, Marinette County Corporation Counsel* and *Charles M. Minerman*, Guardian ad Litem for both wards, all of Marinette and oral argument by *Chester C. Stauffacher* and *Charles M. Minerman*.

For the respondent, Tammy C., there was a brief (in the Court of Appeals) by *Len Kachinsky* and *Kachinsky & Petit Law Offices*, Neenah and oral argument by *Len Kachinsky*.

For the respondent, Anthony C., there was a brief (in the Court of Appeals) and oral argument by *Barbara A. Cadwell*, White Lake.

¶ 1. JANINE P. GESKE, J. This case is before the court on bypass pursuant to Wis. Stat. § (Rule) 809.60 (1995–96). Marinette County (the county) and the Marinette County Department of Human Services (the department) appeal from a circuit court order dismissing a consolidated petition for the termination of parental rights (TPR) of the respondents Tammy C. and Anthony C., parents of Anthony C. and Joseph C. The Circuit Court for Marinette County, the Honorable Tim A. Duket presiding, dismissed the TPR petition, relying on the interpretation of Wis. Stat. § 48.415(2)(a) given in *In re D.F.*, 147 Wis. 2d 486, 433 N.W.2d 592 (Ct. App. 1988). In the circuit court's view, several CHIPS[1] orders lacked the warning notice

---

[1] CHIPS is the commonly used acronym to denote the phrase "child in need of protection or services" as used in the Wisconsin Children's Code, chapter 48, Stats.

required by Wis. Stat. § 48.356(2), as referenced in Wis. Stat. § 48.415(2)(a). Based on its reading of *D.F.*, the circuit court dismissed the TPR petition because of the earlier, allegedly defective notice. We conclude, however, that the plain language of Wis. Stat. § 48.356(2), as referenced in Wis. Stat. § 48.415(2)(a), requires that the warning notice apply only to orders removing children from placement with their parents or denying parental visitation, pursuant to Wis. Stat. §§ 48.345, 48.357, 48.363 or 48.365. Based on our review of the record in this case, all the orders removing the children from placement with their parents or denying parental visitation, pursuant to Wis. Stat. §§ 48.345, 48.357, 48.363 or 48.365, had the required warning notice. We therefore reverse the circuit court order dismissing the consolidated TPR petition, and remand.

¶ 2. The issue raised on appeal, as framed by the parties, is whether Wis. Stat. § 48.356(2), as referenced in Wis. Stat. § 48.415(2)(a),[2] requires that each and

---

[2] The pertinent portion of Wis. Stat. § 48.415(2)(a) (1995–1996) provides: "That the child has been adjudged to be in need of protection or services and placed, or continued in a placement, outside his or her home pursuant to one or more court orders. . .containing the notice required by s. 48.356(2) . . ."

Wisconsin Stat. § 48.356 (1995–96) provides:

(1) Whenever the court orders a child to be placed outside his or her home or denies a parent visitation because the child has been adjudged to be in need of protection or services under s. 48.345, 48.357, 48.363 or 48.365, the court shall orally inform the parent or parents who appear in court of any grounds for termination of parental rights under s. 48.415 which may be applicable and of the conditions necessary for the child to be returned to the home or for the parent to be granted visitation.

(2) In addition to the notice required under sub. (1), any written order which places a child outside the home or denies visitation under sub. (1) shall notify the parent or parents of the information specified under sub. (1).

every written CHIPS order affecting an out-of-home placement of a child have a written TPR warning attached, when the TPR ground asserted is the continuing need of protection or services. The issue as presented in the bypass petition calls into question the *D.F.* decision. However, our review of the record and our reading of the applicable statutes persuades us otherwise.

## FACTS AND PROCEDURAL HISTORY

¶ 3. Some of the pertinent facts are not in dispute. A number of written CHIPS orders were entered in this case, beginning on August 4, 1993. On that date the children were removed from the family home based on a finding of probable cause that one or both parents were unable, unwilling, or unavailable to provide adequate supervision and care for the children. Venue originally was in the Circuit Court for Waupaca County. This case was transferred to the Circuit Court for Marinette County on August 5, 1994.

¶ 4. The parties disagree as to whether the parents ever complied with the court-ordered conditions for the return of their children to their home. According to the limited record before us, the children's father, Anthony C., suffers from a mental illness and also, for some time between 1994 and 1997, was in prison. The circuit court returned the children to their parents' home in May 1994 but continued their formal supervision by the department. On December 8, 1994, there was a new instance of substantiated neglect by the mother, Tammy C., and pursuant to a hearing held the following day, the children were again removed from

---

All future statutory references will be to the 1995–96 volume unless otherwise indicated.

the home. At that time, according to the parties' briefs, the county became aware of an alleged defect in the warning notice of an earlier CHIPS order, but decided not to file a new CHIPS petition. The parties' briefs do not state which particular order or orders were defective.[3] Instead, the county sought and obtained an extension of the existing, allegedly defective dispositional orders. Specific orders pertaining to the custody of Joseph C. and the young Anthony C. will be described more fully later in this opinion.

¶ 5. The department alleged the following additional facts in support of its petition for termination of parental rights. In December 1996 Tammy C., the children's mother, apparently told an administrative review board that she did not plan to make further efforts to follow through with the dispositional orders and alleviate the need for foster care for her two living children. In March 1997 Anthony C., the children's father, was released from prison. The department

---

[3] We have scoured the record on appeal and the parties' briefs in a futile effort to determine exactly which order or orders the parties and the circuit court considered "defective" for lack of a warning notice. The docketing statement filed by Marinette County corporation counsel states: "In the course of preparing the case for trial, it was discovered that there was a significant clerical error in that at least one CHIPS order in the progression of several CHIPS orders placing each of the subject children in foster care outside of the home that did not contain the written warning for termination of parental rights." The circuit court's order for dismissal of the termination of parental rights (TPR) petition states: ". . .' and the Court having reviewed the files in this matter, including the juvenile files relating to the children, and the Court having observed that as to each child there is at least one CHIPS order in the progression of CHIPS orders that does not contain the written TPR warnings required by Section 48.356(2) . . ."

alleges that Anthony C. failed to comply with certain conditions imposed on him by court order, conditions necessary for the return of the children.

¶ 6. Consequently, on April 14, 1997, the department filed a petition to terminate the parental rights of Anthony C. and Tammy C. on the grounds of abandonment and a continuing need for protection or services. Separately, each parent moved to dismiss the petitions. In their dismissal motions, the parents each alleged that the initial CHIPS orders, which had been extended throughout the proceedings, did not contain written TPR warnings required by Wis. Stat. § 48.356(2), as referenced in Wis. Stat. § 48.415(2)(a). At a hearing on September 10, 1997, the circuit court consolidated the two proceedings on behalf of both children. At that time, the county conceded that it could not maintain the abandonment ground against the father, Anthony C., based on his recent incarceration, and because he had had some meaningful contact with the children.

¶ 7. The county also conceded that some orders in the progression of orders affecting these two children were defective. According to the county, none of the other grounds for termination of parental rights enumerated in Wis. Stat. § 48.415 was applicable to the TPR petition. The circuit court, reasoning that *D.F.* requires that "the statutory warning required by sec. 48.356(2), Stats., is given each time an order places a child outside his or her home. . .," then dismissed the TPR petitions on the merits and with prejudice. Shortly thereafter, the circuit court issued orders revising and extending the dispositional order for each child until September 10, 1998. The circuit court attached the notice concerning grounds for termination of parental rights to those orders.

## ARGUMENTS OF THE PARTIES

¶ 8.. The county contends that the interpretation of Wis. Stat. § 48.356(2) in *D.F.* operates to permanently preclude the prosecution of TPR proceedings, brought on the grounds of a continuing need of protection or services, when any one of the CHIPS orders affecting out-of-home placement does not contain the written TPR warnings. The county also maintains that several of the orders affecting the out-of-home placement of the children did not contain the § 48.356(2) warning. Based on its reading of the practical effect of *D.F.* upon this case, the county asserts that the parental rights of Anthony C. and Tammy C. and similarly situated parents can never be terminated when the written TPR warning is erroneously excluded from any one of a progression of CHIPS orders, and where the only available ground for termination is the continuing need for foster placement. That result, according to the county, is one contrary to the "best interests of the child" purpose of the Children's Code because the original petition must be dismissed and the children must be returned home. According to the county's brief, it would have to wait for another incident to justify a new CHIPS order from the circuit court and "start the whole process over again with great care to make sure that the appropriate TPR warning is provided without fail in every CHIPS Order thereafter. Then, after several more perfect CHIPS orders are in place over a period of years, another (TPR) action can be commenced."

¶ 9. The parents agree with the county's assertion that some of the orders affecting the children's out-of-home placement did not contain the Wis. Stat. § 48.356(2) warning. The parents contend that under

*D.F.*, those orders are fatally defective to the TPR petition.

## STANDARD OF REVIEW

¶ 10. The issue presented on bypass is whether Wis. Stat. § 48.356(2), as referenced in Wis. Stat. § 48.415(2)(a), requires that each and every CHIPS order affecting the out-of-home placement of a child must have a written TPR notice attached if the particular ground of children in need of protection or services is the basis for the termination of parental rights. Resolving this issue requires us to interpret and apply Wis. Stat. §§ 48.356(2) and 48.415(2)(a). Questions of statutory interpretation and the application of statutes to undisputed facts are questions of law which we review without deference to the circuit court or the court of appeals. *See In Interest of Jamie L.*, 172 Wis. 2d 218, 225, 493 N.W.2d 56 (1992).

¶ 11. In *Jamie L.* we considered the notice requirements for a TPR petition where the ground asserted was the continuing need for protection or services. We set out the following rules for statutory interpretation:

> The goal of interpreting a statute is to ascertain the legislature's intent. To find that intent, we first look to the statute's language. If the statute's words unambiguously declare the legislature's intent, this court's duty is to apply that intent to the facts presented; we may not look beyond the statute's language to determine what that language means. Consequently, we will only construe a statute if the statute is ambiguous. A statute is ambiguous if well-informed persons could reasonably reach dif-

ferent conclusions concerning its meaning. In construing an ambiguous statute, we examine the statute's history, context, subject matter, scope, and object.

*Id.*, 172 Wis. 2d at 225 (citations omitted).

## STATUTORY INTERPRETATION

¶ 12. In conformance with those rules, we first consider the language of the statutes. Section 48.415, Stats., identifies the possible grounds for involuntary termination of parental rights. That section provides that one ground for involuntary termination, the continuing need for protection or services, shall be established by proving that "the child has been adjudged to be in need of protection or services and placed, or continued in a placement, outside his or her home pursuant to one or more court orders. . .containing the notice required by s. 48.356(2)." Wisconsin Stat. § 48.415(2)(a). This language is clear in its imposition of three conditions. First, the subject child must have been adjudged to need protection or services by the county. Second, because of that determination of need, the child must have been placed outside the parental home pursuant to at least one court order, or similarly had his or her out-of-home placement continued. Third, the order or orders placing the child outside the home must have contained the notice required in another statute, § 48.356(2). Well-informed persons could not reasonably differ as to the requirements of this statute.

¶ 13. Next, we consider the language of the statute referenced in Wis. Stat. § 48.415. Section 48.356(2), Stats., provides: "In addition to the notice required under sub. (1), any written order which places a child outside the home or denies visitation under sub. (1)

215

shall notify the parent or parents of the information specified under sub. (1)." As we recognized in *Jamie L.*, well-informed people could not reasonably differ as to what these words mean. This statute unambiguously requires that any written order which places the child outside the home under § 48.356(1) notify the parent of the same information that sub. (1) specifies. *See Jamie L.*, 172 Wis. 2d at 225–26. The information specified under § 48.356(1) includes any applicable grounds for termination of parental rights under § 48.415 and the conditions necessary for the child to be returned to the home. *See id.* at 226.

¶ 14. *Jamie L.* concerned the content of the required notice. This case concerns when the required warning notice must be given. In our view, Wis. Stat. §§ 48.415(2)(a) and 48.356(2) are unambiguous in their answer.

¶ 15. Application of the notice requirement of Wis. Stat. § 48.356, as referenced in Wis. Stat. § 48.415(2)(a), is limited to orders placing a child outside his or her home[4] in certain circumstances. Section 48.356(1) defines those circumstances as when the child has been adjudged in need of protection or services under one of four particular statutory provisions: §§ 48.345, 48.357, 48.363, or 48.365. Section 48.345 concerns the entry of orders directing disposition of children adjudged in need of protection or services. Section 48.357 concerns placement changes after a dispositional order has been entered. Section 48.363

---

[4] 1995 Wis. Act 275, § 54 amended the 1993–94 version of Wis. Stat. § 48.356 to require the circuit court to inform a parent denied visitation of any applicable grounds for involuntary termination of the parental rights. Because of the facts presented in this case, we address only orders placing a child outside the home.

concerns revision of dispositional orders when the revision does not involve a change in placement. Finally, § 48.365 concerns the extension of dispositional orders, including dispositional orders that had previously been revised.

■

¶ 16. The language of both Wis. Stat. §§ 48.415(2)(a) and 48.356(2) show that the legislature has chosen to require a notice warning parents of the potential for termination of their parental rights only when their children are taken from the home under a dispositional order or its extension or revision. Dispositional orders may stay in place for as long as 12 months before they are terminated or extended. *See* Wis. Stat. § 48.355(4). Similarly, most revisions or extensions of a dispositional order may stay in place for as long as 12 months. *See id.*

¶ 17. If, pursuant to a dispositional order or its extension or revision, the child has been adjudged in need of protection or services and has been placed outside the home for a cumulative total period of at least six months, that period of out-of-home placement can, in conjunction with other facts, constitute grounds for termination of parental rights. *See* Wis. Stat. § 48.415(2)(c).[5] To succeed on a TPR petition, the petitioner also has to show a substantial likelihood that the parent will not meet the conditions established for the return of his or her child within the 12-month period

[5] Prior to the enactment of 1995 Wis. Act 275, § 78, Wis. Stat. § 48.415(2)(c) required, as partial proof of the TPR ground of a child in need of protection or services, that a child 3 years of age or older have been outside the home for a cumulative total period of one year. The current version of the statute does not make a distinction between children older or younger than 3 years of age.

following the fact-finding hearing which occurs after someone contests the termination. *See* Wis. Stat. §§ 48.424; 48.422.

¶ 18. In contrast to the 12-month duration of a dispositional order, when a child is placed outside the home pursuant to an order for temporary physical custody under Wis. Stat. § 48.13, removal from the home is for a much shorter period. If the child is not released immediately as provided by Wis. Stat. § 48.20, the circuit court shall conduct a hearing within 48 hours of the decision to take the child into custody, excluding weekends and holidays. *See* Wis. Stat. § 48.21(1)(a).[6] By the time of that hearing, other procedural time limits come into play. *See* Wis. Stat. §§ 48.21(1)(a); 48.25; 48.315. If a petition under Wis. Stat. § 48.13 is filed, the circuit court will conduct a fact-finding hearing and make a determination as to whether the child is in need of protection or services which can be ordered by the court. *See* Wis. Stat. § 48.31(2).[7] If the court finds that the child is in need of such protection or services, at the close of the fact-finding hearing the court must set a date for a dispositional hearing. The dispositional hearing is held no more than 30 days later for a child

---

[6] Prior to the enactment of 1995 Wis. Act 275, § 31, Wis. Stat. § 48.21(1)(a) required the juvenile court to conduct this hearing within 24 hours of the decision to hold the child, excluding weekends and holidays.

[7] Prior to the enactment of 1995 Wis. Act 275, § 52, Wis. Stat. § 48.31(2) simply provided that at the conclusion of the hearing, the court or jury shall make a determination of the facts, and that if the court or jury finds that the facts alleged in the petition were not proved, the court shall dismiss the petition with prejudice. As amended, the current subsection provides that the juvenile court determine whether the child needs protection or services which the juvenile court can order.

held in non-secure custody. *See* Wis. Stat. § 48.31(7). Section 48.315 covers the types of permitted exceptions to the time periods set out in the above referenced provisions.

¶ 19. The distinctions between dispositional orders and temporary physical custody orders include the degree of fact-finding required before the order is entered, and the potential consequences once such orders have been entered. Temporary physical custody orders are just that-temporary. Those orders generally expire within 30 days, unless extended. *See, e.g.*, Wis. Stat. § 48.21, Hearing for child in custody; Wis. Stat. § 48.21(4), Continuation of custody; Wis. Stat. § 48.227(4)(e)2, Runaway homes; Wis. Stat. § 48.25(2), Petition; authorization to file. After a petition has been filed, other statutes provide for short time frames during the hearing stage. *See, e.g.*, Wis. Stat § 48.30(1), Plea hearing; Wis. Stat. § 48.305, Hearing upon the involuntary removal of a child; Wis. Stat. § 48.31(7), Fact-finding hearing.

¶ 20. Dispositional orders, on the other hand, can be in effect for up to 12 months, *see* Wis. Stat. § 48.355(4); and longer if the circuit court orders an extension, *see* Wis. Stat. § 48.365(5). In addition, placement of a child outside of his or her home pursuant to a temporary physical custody order will not, by itself, result in the type of out-of-home placement that can form the basis for a termination of parental rights. Placement outside the home pursuant to a dispositional order, in conjunction with parental unwillingness or inability to comply with the conditions of the dispositional order, can form a basis for termination of parental rights. *See* Wis. Stat. § 48.415(2). It is that potential permanent loss of

219

parental rights which necessitates the requirement for a warning notice.[8]

¶ 21. In an earlier case, we described the gravity of the state's power to terminate the parental relationship, and the concomitant rigor of procedures constraining that power.

> It is apparent that the Wisconsin legislature has recognized the importance of parental rights by setting up a panoply of substantive rights and procedures to assure that the parental rights will not be terminated precipitously, arbitrarily, or capriciously, but only after a deliberative, well considered, fact-finding process utilizing all the protections afforded by the statutes unless there is a specific, knowledgeable, and voluntary waiver.

*In re Termination of Parental Rights to M.A.M.*, 116 Wis. 2d 432, 437, 342 N.W.2d 410 (1984). The court of appeals in *D.F.* echoed that theme: "[The legislature] has chosen, for reasons which we consider apparent, to surround the CHIPS grounds for involuntary termination with procedural safeguards which will assure that a parent will be fully informed of the grounds for termination of parental rights which may be applicable." 147 Wis. 2d at 498.

---

[8] Part of the confusion in the record and the parties' briefs as to which CHIPS order or orders were defective may stem from an imprecise use of statutory terms. Marinette County's petition to bypass states ". . . on August 11, 1993 the children were taken into custody and placed in foster care pursuant to a CHIPS *dispositional order* issued by the Waupaca County Juvenile Court." (Emphasis supplied.) As we discuss below, the juvenile court issued orders for temporary physical custody of the children in August 1993, and placed them in foster care. No dispositional order was entered until January 1994.

¶ 22. The circuit court in this case cited *D.F.* as controlling its decision to dismiss the consolidated TPR petition because, according to the circuit court's review of the record, some of the earlier CHIPS orders did not include a notice warning of the potential for termination of parental rights based upon the ground of a continuing need for protection or services, should the parent fail to comply with the conditions of the order. The circuit court quoted the *D.F.* court as requiring that "[t]he statutory warning required by sec. 48.356(2), Stats., be given each time an order places a child outside his or her home."

¶ 23. It is important to point out that the *D.F.* text quoted by the circuit court is completed by qualifying phrases appearing both before and after it. Those phrases surrounding the portion quoted by the circuit court are italicized herein for illustration: "*Second, a continuing need for protection and services can be a basis for involuntary termination of parental rights only if* the statutory warning required by sec. 48.356(2), Stats., is given each time an order places a child outside his or her home *pursuant to secs. 48.345, 48.357, 48.363 or 48.365.*" *D.F.*, 147 Wis. 2d at 498–99. As we demonstrate below, all of the orders placing Joseph C. and Anthony C. outside their home, pursuant to §§ 48.345, 48.357, 48.363 or 48.365, include the requisite notice of warning. Other orders for the children's out-of-home placement were temporary physical custody orders, or extensions of such temporary orders, and thus were not subject to the procedural rigor of orders potentially leading to a loss of parental rights based on a continuing need for protection or services.

## STATUTORY APPLICATION

¶ 24. In this case, the children of Anthony C. and Tammy C. were not the subject of a dispositional order under Wis. Stat. § 48.356 until January 25, 1994. Under the dispositional orders of that date, both children were placed in foster homes, with formal supervision by the department of human services effective until July 19, 1994. The children had been in foster care prior to entry of the dispositional orders, but that earlier foster care was only non-secure, temporary physical custody, pursuant to Wis. Stat. §§ 48.13, 48.19, 48.205, 48.207 and 48.21. None of the latter provisions requires a notice warning parents of the potential for termination of their parental rights as does Wis. Stat. § 48.415(2)(a), as referenced in § 48.356(2).

¶ 25. There is no dispute that the dispositional orders of January 25, 1994 pertaining to each of Anthony C.'s and Tammy C.'s children contained the required written warnings. Thus, the initial dispositional orders are valid under Wis. Stat. §§ 48.415(2)(a) and 48.356(2).

¶ 26. Subsequently, on May 16, 1994, the circuit court for Waupaca County issued orders granting Tammy C.'s petition to change the placement of her children to her home. Those orders, by their very terms, did not direct the children to be placed outside their home, and thus did not require the Wis. Stat. § 48.356 warning. Those orders did not terminate the dispositional orders or change the condition that the children be under the formal supervision of the department of human services.

¶ 27. On July 13, 1994, while the children were still placed with their mother but under the formal supervision of the department, the circuit court for

Waupaca County granted a temporary extension of the dispositional orders pursuant to Wis. Stat. § 48.365(6). The July 13, 1994 orders did not place the children outside the home. Similarly, on August 5, 1994, the circuit court granted a formal extension of the dispositional orders, continuing placement with the mother and supervision by the department.[9] Because neither of those orders placed the children outside the home, the Wis. Stat. § 48.356 warning was not required.

¶ 28. Several months later the department requested and took temporary physical custody of the children, based on substantiated physical neglect by their mother. After issuing several orders for temporary physical custody pursuant to Wis. Stat. § 48.21, the circuit court for Marinette County ordered a change in placement and extension of the original dispositional orders until January 31, 1996, pursuant to Wis. Stat. §§ 48.363 and 48.365. These orders, revising and extending the dispositional orders, included the notice required by § 48.356. These orders resulted in placing the children outside their mother's home.

¶ 29. In August 1995 the circuit court granted a petition by the department to extend the dispositional orders until July 20, 1996. In the department's view, the mother, Tammy C., had failed to meet the conditions imposed by the dispositional orders, and therefore the department was unwilling to withdraw its supervision of the children until the mother had demonstrated a desire and ability to meet the conditions ordered by the court. The August 17, 1995 orders granting the extension and maintaining the children's placement outside their mother's home included the

---

[9] At the same time, the circuit court for Waupaca County also ordered a change of venue to the circuit court for Marinette County, as the county in which the mother then resided.

warning required by Wis. Stat. § 48.356, as referenced in Wis. Stat. § 48.415(2)(a).

¶ 30. On December 18, 1995, the circuit court for Marinette County issued another order in Anthony C.'s case, changing his placement and revising the dispositional order. This order did not include the Wis. Stat. § 48.356 warning, but that warning was not required because the order did not change young Anthony C.'s placement from that of his mother's home to somewhere outside the home. At the time of the December 18, 1995 order, young Anthony C. had already been placed outside his mother's home pursuant to the valid order entered March 7, 1995.

¶ 31. The next orders concerning placement of Anthony C.'s and Tammy C.'s children were issued on July 31, 1996. Those orders extended and revised the dispositional orders for both children, and were effective until July 17, 1997. Those orders contained the warnings required by Wis. Stat. § 48.356.

■

¶ 32. In sum, all of the dispositional orders placing the children of Tammy C. and Anthony C. *outside of the home* contained the required warnings.[10] Orders

---

[10] We recognize the existence of another court of appeals decision, where the court declined to require that the warning be attached to several extended or revised dispositional orders. *See In Interest of K.K. and T.K.*, 162 Wis. 2d 431, 469 N.W.2d 881 (Ct. App. 1991). The *K.K.* court distinguished the warning requirement of Wis. Stat. § 48.415(2)(a), as discussed in *D.F.* where the ground for termination was the continuing need for protection or services, from the ground at issue in *K.K.*—abandonment. The warning requirement when the termination ground is abandonment arises from Wis. Stat. § 48.415(1)(a)2: "The child has been placed, or continued in a placement, outside the parent's home by a court order contain-

extending a condition of the dispositional orders, such as allowing supervision by the department, but issued while the children were placed with one or both parents, did not require the Wis. Stat. § 48.356(2) warning. Because the parents in this case received the required written statutory warnings, it was error for the circuit court to dismiss the TPR petitions. We therefore reverse the order of dismissal, and remand to the circuit court for reinstatement of the TPR petitions.

*By the Court.*—The order of the circuit court is reversed and the cause remanded.

ing the notice required by s. 48.356(2). . .and the parent has failed to visit or communicate with the child for a period of 3 months or longer". The *K.K.* court read that subsection as requiring only one order to have the warning.