STARK, P.J.[1]
¶1 M.C. appeals a case closure order entered in a CHIPS[2] proceeding regarding his son, Alex.[3] In that order, the Marathon County Circuit Court granted primary physical placement of Alex to his mother, A.B., during the school year and granted M.C. and A.B. joint legal custody. On appeal, M.C. argues the circuit court erred by: (1) failing to appoint a guardian ad litem (GAL) for Alex to provide an opinion regarding Alex's best interests related to the allocation of legal custody and physical placement between his parents; (2) using a contract analysis to determine legal custody and physical placement, rather than considering Alex's best interests; and (3) limiting the evidence it considered to the time period between September 28, 2017, and December 29, 2017. M.C. argues these errors render the case closure order void, and an Outagamie County order dated December 21, 2017, is therefore the operative order concerning Alex's legal custody and physical placement.
¶2 We agree with M.C. that the circuit court erred by failing to appoint a GAL for Alex to provide an opinion regarding his best interests related to the allocation of legal custody and physical placement between his parents. We further agree that the court's failure to appoint a GAL renders the case closure order void. Because the dispositional order in the CHIPS proceedings has expired, the court is no longer competent to enter orders regarding Alex's legal custody and physical placement. The Outagamie County order dated December 21, 2017, is therefore the operative order concerning those issues.
BACKGROUND
¶3 Alex was born in September 2012. In January 2014, M.C. was adjudicated to be Alex's father in an Outagamie County paternity action. Alex resided primarily with A.B. in Marathon County. However, in March 2016, Marathon County filed a CHIPS petition alleging Alex was in need of protection or services and removed him from A.B.'s home. Alex was then placed with M.C. at his home in Outagamie County.
¶4 The County's CHIPS petition alleged that, during the execution of a search warrant, methamphetamine and drug paraphernalia were found in A.B.'s residence. The petition further alleged that the condition of the residence was "unsafe and unsanitary," with used syringes, unidentified pills, and other dangerous items located in areas accessible to Alex. A subsequent dispositional report indicated that A.B. had admitted using methamphetamine in Alex's presence on "many occasions." The dispositional report further indicated that Alex's speech was delayed, that he had never been to a dentist, and that he was suffering from extensive tooth decay.
¶5 Attorney John Bliss was appointed to serve as Alex's GAL in the CHIPS proceedings. In June 2016, the Marathon County Circuit Court entered a dispositional order finding Alex in need of protection or services under WIS. STAT. § 48.13(10).[4] The dispositional order continued Alex's placement with M.C. and set forth various conditions for his return to A.B.'s home. The dispositional order was originally scheduled to expire on June 2, 2017, but it was later extended until December 31, 2017.
¶6 On August 21, 2017, the County filed a "Notice of Change of Placement." The County asserted A.B. had satisfied all of the conditions set forth in the dispositional order, and it therefore recommended that Alex "be returned to the care of his mother."
¶7 A change in placement hearing took place on September 28, 2017. At the close of the hearing, the circuit court issued a provisional order transferring primary physical placement of Alex to A.B. for the next three months and granting M.C. and his parents periods of placement every other weekend and during school breaks. The court clarified that it was not addressing Alex's placement with A.B. as opposed to M.C., but, rather, whether A.B. had met the conditions for reunification set forth in the dispositional order. The court stated,
We are not in the family court setting. After the first of this year [i.e., after expiration of the dispositional order], ... the parties will be free to spend as much time as they want and argue as much as they want and go to court as much as they want and fight as much as they want in order to make this little boy's life better, and that's what happens in family court.
¶8 M.C. subsequently filed a petition to determine legal custody and physical placement of Alex in Outagamie County Circuit Court, under the same case number as the existing paternity judgment. On October 17, 2017, M.C.'s attorney wrote to the Marathon County Circuit Court indicating that he had commenced proceedings in Outagamie County "to review and modify the current Order of the Family Court effective when the CHIPS proceeding terminates on December 31, 2017."
¶9 On November 21, 2017, A.B. filed a request for case closure in the CHIPS case, pursuant to WIS. STAT. § 48.355(4g). As part of that request, she asked the circuit court to modify "the family court order in [the Outagamie County paternity action] ... with respect to ... Periods of physical placement." Specifically, she asked the circuit court to continue the placement arrangement stated in its October 2, 2017 order-i.e., primary physical placement with A.B., and periods of physical placement with M.C. on alternating weekends and during school breaks.
¶10 In the meantime, a GAL was appointed for Alex in the Outagamie County proceedings, and a hearing in that case was held before a family court commissioner on December 12, 2017. On December 21, 2017, the family court commissioner issued an order awarding M.C. primary physical placement of Alex, effective January 3, 2018, and awarding A.B. "alternate periods of physical placement ... 2 out of every 3 weekends." The order explained:
The Court is aware that there is currently an order in place concerning a CHIPS action in Marathon County, Case Number 16-JC-46, involving the minor child .... The Court further understands that any placement orders in the CHIPS action take precedence over this Court's orders until the CHIPS action has been closed. The Court has been advised that the CHIPS action will likely be closed as of December 31, 2017. Therefore, this Court's orders concerning custody and physical placement of the minor child are effective January 3, 201[8] after the CHIPS action is closed.
¶11 The Marathon County Circuit Court held a hearing on A.B.'s request for case closure on December 29, 2017. The court heard testimony from M.C., A.B., and a Marathon County social worker. Attorney Bliss-Alex's GAL in the CHIPS matter-also provided certain opinions, which we discuss in greater detail below.
¶12 The circuit court issued an oral ruling at the close of the December 29 hearing. The court began by emphasizing that it viewed the CHIPS order as a promise to A.B. that Alex would be returned to her care if she complied with the order's terms. The court explained:
I think it is a contract that we say to mothers who are addicted to meth, if you truly love your children and if you sacrifice everything and shut up and listen to what we are saying ... you will have your children back at some point, and I think that is the contract that CHIPS brings .... [A]nd it certainly is, in my estimation, never to be breached by society. Society must always live by that contract.
Because if we ever dangle that carrot in front of someone and take it away, then we are no better than the people who take them away in the first instance. I do believe it's a promise, and I will stick by that word. I think that's exactly what we make to people when we have a CHIPS order.
¶13 The circuit court then addressed the procedural posture of the case, stating,
[T]o ... say this is a placement hearing where I am to decide who is the best parent is completely wrong. It's not what I am to decide today. I am to decide whether the mother has met conditions, and I find she's met those conditions that were demanded of her.
The court further concluded it had authority to issue an order closing the CHIPS case and determining legal custody and physical placement under WIS. STAT. § 48.355(4g). The court also stated it was in a better position than the Outagamie County court to assess custody and placement because: (1) Outagamie County had "no contact with this case other than it is the place where paternity was determined"; and (2) the Outagamie County GAL "has not heard any of the testimony here today, has not talked to anybody at the [Marathon County Department of Social Services]."
¶14 Ultimately, the circuit court granted A.B.'s request for case closure. After addressing the best interests factors set forth in WIS. STAT. § 767.41(5)(am), the court granted A.B. and M.C. joint legal custody of Alex. The court also ordered that the placement schedule from its prior order would continue during the school year, such that A.B. would have primary physical placement of Alex, and M.C. would have periods of physical placement on alternating weekends and during school breaks. The court ruled that during the summer M.C. would have primary physical placement of Alex, and A.B. would have periods of physical placement every other weekend. The court issued a written order memorializing its oral rulings on January 4, 2018, and M.C. now appeals.
DISCUSSION
¶15 As noted above, M.C. argues the circuit court erred in three ways with respect to legal custody and physical placement of Alex. First, he argues the court erred by failing to appoint a GAL for Alex to provide an opinion regarding his best interests related to the allocation of legal custody and physical placement between his parents. Second, he argues the court erroneously used a contract analysis when granting A.B. joint legal custody and primary physical placement of Alex, instead of considering Alex's best interests. Third, he contends the court erred by limiting the evidence it considered to the time period between September 28, 2017, and December 29, 2017. Based on these errors, M.C. argues the January 4, 2018 case closure order is void, and the Outagamie County order dated December 21, 2017, controls Alex's legal custody and physical placement.
¶16 We agree with M.C. that the circuit court erred by failing to appoint a GAL to provide an opinion regarding Alex's best interests related to the allocation of legal custody and physical placement between his parents. It is undisputed that the court had authority under WIS. STAT. § 48.355(4g) to close the CHIPS case and enter an order determining legal custody and physical placement. However, when a court determines legal custody and physical placement under these circumstances, it must do so using the procedures set forth in the relevant family law statutes. See § 48.355(4g)(d)2. WISCONSIN STAT .§ 767.407 provides, in relevant part, that a court "shall appoint a guardian ad litem for a minor child in any action affecting the family if ... the legal custody or physical placement of the child is contested." Sec. 767.407(1)(a)2. In this case, the parties clearly contested Alex's legal custody and physical placement, and § 767.407(1)(a)2. therefore required the court to appoint a GAL for Alex regarding those issues.
¶17 WISCONSIN STAT. § 767.407(1)(am) sets forth an exception to the GAL requirement "if all of the following apply":
1. Legal custody or physical placement is contested in an action to modify legal custody or physical placement under s. 767.451 or 767.481.
2. The modification sought would not substantially alter the amount of time that a parent may spend with his or her child.
3. The court determines any of the following:
a. That the appointment of a guardian ad litem will not assist the court in the determination regarding legal custody or physical placement because the facts or circumstances of the case make the likely determination clear.
b. That a party seeks the appointment of a guardian ad litem solely for a tactical purpose, or for the sole purpose of delay, and not for a purpose that is in the best interest of the child.
Sec. 767.407(1)(am)1.-3. In this case, the second of these requirements was not satisfied because the modification of physical placement that A.B. sought-i.e., primary physical placement of Alex-would "substantially alter" the amount of time M.C. could spend with Alex. See § 767.407(1)(am)2. The exception to the GAL requirement set forth in § 767.407(1)(am) is therefore inapplicable.
¶18 A.B. does not dispute that WIS. STAT. § 767.407(1)(a)2. required the circuit court to appoint a GAL for Alex before determining legal custody and physical placement. Instead, she contends the GAL requirement was satisfied because Bliss acted as Alex's GAL in the CHIPS proceedings and "expressed his opinions to the court" regarding Alex's best interests during the December 29, 2017 case closure hearing.
¶19 The record does not support A.B.'s position. During the December 29 hearing, M.C.'s attorney asserted that Bliss should not be permitted to provide an opinion about Alex's best interests related to legal custody and physical placement because Bliss had not done any investigation in the case "other than talk[ing] with the social workers." The circuit court responded:
I think Mr. Bliss would say, look. I was hired for a CHIPS hearing; not to be a GAL in a custody dispute or placement dispute. So I focus on the child. I focus on whether the department tells me the child-that the mother has met the requirements, and if that is true, then I recommend that the child be back the way it was.
And so it is wrong for me then to put him in the place, and I am not asking him for any kind of a recommendation as to placement. I am simply asking him for his recommendation as to whether the mother met the requirements put on her and whether he would recommend that the case be closed.
Shortly thereafter, the court clarified, "I want you to understand that I do not make my placement determination based upon any recommendation from Mr. Bliss. I don't expect to hear a placement recommendation other than for him to say, Judge, she's met her requirements or she hasn't met her requirements."
¶20 When Bliss ultimately provided his recommendation, he began by discussing some of the factual background of the case. He then opined that A.B. had satisfied all of the conditions in the dispositional order for Alex to be returned to her home. Bliss noted that A.B. had been provisionally granted placement in October 2017, and since that time nothing had occurred to warrant removing Alex from her care. He then stated:
We know that she remains on supervision. We know that she has that hanging over her head, but everything that I have seen in this case, she's become a model citizen and a good mother. I think that the court's order which called for reunification with [A.B.] ought to hold. I think she is doing well. I think it's in the best interests of [Alex] that it continue.
¶21 At that point, counsel for M.C. objected, stating, "I thought you said earlier in this hearing that Mr. Bliss was not going to be giving any input on best interests; only on whether or not the CHIPS ought to be terminated." The circuit court responded, "Whether it's in the best interest of [Alex] is what he is here to tell us; not as to a placement schedule, but as to a dispositional order and the request for case closure. I overrule your objection." Bliss then added, in closing, that the court should consider "the fact that this reunification has allowed [Alex] to reunify with his sibling." During its subsequent oral ruling, the court stated Bliss had "not said one thing other than that he believes that [A.B.] has met all of the terms of the dispositional order."
¶22 The above excerpts show that although Bliss was appointed to act as Alex's GAL in the CHIPS proceedings, he did not opine on Alex's best interests for the purposes of allocating legal custody and physical placement between M.C. and A.B. He merely opined that A.B. had met the conditions set forth in the dispositional order and that, pursuant to that order, Alex could therefore be reunited with her.
¶23 Moreover, even assuming Bliss's comments during the December 29 hearing could be interpreted as opining about Alex's best interests with respect to custody and placement, the circuit court clearly did not view Bliss as having provided any opinion regarding the allocation of custody and placement between M.C. and A.B. The court reiterated on multiple occasions that Bliss had only been hired to provide an opinion as to whether A.B. had met the conditions set forth in the dispositional order. Under these circumstances, we cannot agree with A.B. that Bliss's participation in the December 29 hearing satisfied the requirement in WIS. STAT. § 767.407 that the court appoint a GAL for Alex for purposes of determining custody and placement.
¶24 M.C. argues the circuit court's failure to appoint a GAL for Alex, as required by WIS. STAT. § 767.407, violated procedural due process. M.C. therefore contends that the case closure order entered in the CHIPS proceedings is void, and, as a result, the Outagamie County order dated December 21, 2017, is the operative order concerning Alex's legal custody and physical placement. We agree with M.C.'s analysis.
¶25 An order entered contrary to due process is void. See Neylan v. Vorwald , 124 Wis. 2d 85, 95, 368 N.W.2d 648 (1985) (citing Wengerd v. Rinehart , 114 Wis. 2d 575, 587, 338 N.W.2d 861 (Ct. App. 1983) ). The fundamental requirements of procedural due process are notice and an opportunity to be heard. Sweet v. Berge , 113 Wis. 2d 61, 64, 334 N.W.2d 559 (Ct. App. 1983). In this case, WIS. STAT. § 767.407 required the circuit court to appoint a GAL for Alex in order to provide an opinion regarding Alex's best interests related to the allocation of legal custody and physical placement between his parents. By failing to appoint a GAL for Alex, the court essentially denied him the opportunity to be heard and to have his best interests considered on those issues, thus violating his right to procedural due process. Consequently, the case closure order entered in the CHIPS proceedings is void.[5]
¶26 The effect of our decision in this case is that the Outagamie County order dated December 21, 2017, is now the operative order concerning Alex's legal custody and physical placement. Under different circumstances, the remedy might have been to remand this matter to the Marathon County Circuit Court to reassess legal custody and physical placement after appointing a GAL for Alex. However, the dispositional order in this case expired on December 31, 2017. As such, the Marathon County court is no longer competent to take any action in this matter. See Green Cty. Dep't of Human Servs. v. H.N. , 162 Wis. 2d 635, 654, 469 N.W.2d 845 (1991) (concluding a circuit court loses competency in a CHIPS action when the dispositional order expires). The Outagamie County order, which purported to go into effect on January 3, 2018, is therefore the operative order concerning Alex's legal custody and physical placement.
By the Court. -Order reversed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)4.

This appeal is decided by one judge pursuant to Wis. Stat. § 752.31(2)(e) (2017-18). All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

"CHIPS is the commonly used acronym to denote the phrase 'child in need of protection or services' as used in the Wisconsin Children's Code." Marinette Cty. v. Tammy C. , 219 Wis. 2d 206, 208 n.1, 579 N.W.2d 635 (1998).

For ease of reading, we refer to the child using a pseudonym, rather than his initials.

Wisconsin Stat . § 48.13(10) applies to a child "[w]hose parent, guardian or legal custodian neglects, refuses or is unable for reasons other than poverty to provide necessary care, food, clothing, medical or dental care or shelter so as to seriously endanger the physical health of the child."

Notably, after the parties filed their briefs in this appeal, we ordered them to file supplemental briefs addressing whether the circuit court's alleged errors rendered the case closure order void. In his supplemental brief, M.C. argued the order was void because the circuit court's failure to appoint a GAL for Alex violated Alex's right to due process. A.B. failed to respond to that argument in her supplemental brief. She did not dispute M.C.'s assertion that the failure to appoint a GAL violated Alex's right to due process, nor did she argue that even if a due process violation occurred, the case closure order was not void. Unrefuted arguments are deemed conceded. See Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp. , 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979).