# COURT OF APPEALS
## DECISION
## DATED AND FILED

## August 3, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal Nos. 2021AP816**
**2021AP817**
**STATE OF WISCONSIN**

Cir. Ct. Nos. 2019TP47
2019TP48

**IN COURT OF APPEALS
DISTRICT I**

APPEAL NO. 2021AP816

IN RE THE TERMINATION OF PARENTAL RIGHTS TO F.G.,
A PERSON UNDER THE AGE OF 18:

STATE OF WISCONSIN,

PETITIONER-RESPONDENT,

V.

L.I.,

RESPONDENT-APPELLANT.

**APPEAL NO. 2021AP817**

**IN RE THE TERMINATION OF PARENTAL RIGHTS TO R.G.,
A PERSON UNDER THE AGE OF 18:**

**STATE OF WISCONSIN,**

      **PETITIONER-RESPONDENT,**

  **V.**

**L. I.,**

      **RESPONDENT-APPELLANT.**

APPEALS from orders of the circuit court for Milwaukee County: MARSHALL B. MURRAY, Judge. *Affirmed*.

¶1 WHITE, J.[1] L.I. appeals the circuit court orders terminating her parental rights to her children, F.G. and R.G. L.I. argues that the court erroneously weighed the children's harm from severing the relationship with their respective foster parents against the harm from severing the relationship with their mother. We disagree that the court's consideration of additional factors constitutes an erroneous exercise of discretion, and accordingly, we affirm.

---

[1] These appeals are decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted. These cases were consolidated in May 2021.

## BACKGROUND

¶2      The State petitioned to terminate L.I.'s parental rights in March 2019 on the grounds of continuing CHIPS[2] and failure to assume parental responsibilities.  F.G. was approximately twenty-six months old at the time of the petition; she had been removed from L.I.'s care in September 2017 at seven months old after she was taken to the hospital with bruises all over her body, bleeding in the brain and in the eyes, and a lacerated liver.  F.G. had been in the physical care of her father, C.G., who was convicted of felony child neglect because of F.G.'s injuries and who was incarcerated for approximately one year as a result.[3]  R.G. was approximately one year old at the time of the petition; she had been removed from L.I.'s care within days of her birth, before L.I. was discharged from the hospital.  Both children remained outside of the home after their removal.

¶3      After a trial in January 2021, the circuit court found that the State proved by clear and convincing evidence that the grounds existed—namely continuing CHIPS and failure to assume parental responsibility—to terminate L.I.'s parental rights to F.G. and R.G.  The court found that due to her intellectual challenges, L.I. had the desire but not the ability to safely care for "the children's supervision, education, protection and care."  The court found L.I. unfit and proceeded to the dispositional phase of the proceedings, which focuses on the best interests of the child.

---

[2] "CHIPS is the commonly used acronym to denote the phrase 'child in need of protection or services' as used in the Wisconsin Children's Code, chapter 48, Stats." *Marinette Cnty. v. Tammy C*., 219 Wis. 2d 206, 209 n.1, 579 N.W.2d 635 (1998).

[3] C.G. is the father of both F.G. and R.G.  His parental rights were also terminated in these proceedings, his rights are not on appeal in this action, and we do not address C.G. any further.

¶4      In the dispositional phase, the State called K.K., the former case manager assigned to the children, who managed the case from F.G.'s injuries in September 2017 until September 2020.  K.K. testified that L.I. had cognitive disabilities.  L.I. had difficulty attending scheduled appointments and was discharged from several parenting education social service providers and visitation supervisors for lack of attendance.  K.K. testified that despite some difficulties setting up visits, L.I. was consistent with visitation with F.G. until R.G. was born; however, she had a difficult time with parenting during visitation, such as making bottles or diapering F.G.  K.K. testified that L.I. had supervised visitation with F.G. and R.G. until her third child, C.G., Jr.,[4] was born in November 2019, when she again had a gap in visitation until about May 2020.  L.I. continued to have difficulties managing more than one child at a time during her visitation.

¶5      The State also called L.F., the current case manager assigned to the children, who began managing the case in September 2020.  L.F. testified that she had not observed L.I. interact with the children because no supervised visitation had occurred since she took over the case.  Additionally, the State called one of F.G.'s foster parents and one of R.G.'s foster parents

¶6      The court reviewed whether termination of parental rights was in the best interests of F.G. and R.G. under the statutory factors in WIS. STAT. § 48.426.[5]

---

[4] C.G., Jr. and a fourth child, L.I., Jr., born in October 2020, are not subject to this action.

[5] In considering the best interests of the child in the disposition of a termination of parental rights petition, "the court shall consider but not be limited to the following" factors:

(a) The likelihood of the child's adoption after termination.

(b) The age and health of the child….

(continued)

4

The court considered the first factor on likelihood of adoption, concluding that the adoptive resources for F.G and R.G. were "great." The court stated that the foster parents were "ready and willing to adopt." The court considered the second factor, the children's age and health, and concluded that those were not barriers to adoption or adoptability.

¶7 The court thoroughly discussed the third factor, whether the children had a substantial relationship to L.I. and whether it would be harmful to sever the legal relationship. On the issue of the substantial relationship between the biological parent and child, the court stated that a substantial relationship is "more than love."

> The relationship that the children have with each other, siblings, and the children that live in the homes with, they consider to be their siblings. The [c]ourt must consider those relationships as well trying to find a balancing act saying which one carries more weight, which one can have the greatest impact or may have the greatest impact on the child?

---

(c) Whether the child has substantial relationships with the parent or other family members, and whether it would be harmful to the child to sever these relationships.

(d) The wishes of the child.

(e) The duration of the separation of the parent from the child.

(f) Whether the child will be able to enter into a more stable and permanent family relationship as a result of the termination, taking into account the conditions of the child's current placement, the likelihood of future placements and the results of prior placements.

Sec. 48.426(3).

The court acknowledged that there was testimony about the foster parents willingness to maintain contact with the parents and extended family; however, the court noted that under Wisconsin law, the circuit court "may consider the adoptive parent's promise … unenforceable[.]"

¶8 The circuit court found that the children did not have a substantial relationship with L.I. Further, the court found there was not substantial ongoing contact with the children's extended family. Concurrently, the court considered the relationship with the biological family and the relationship with the foster parents, pondering the impact of denying the termination of parental rights "on the relationship that the child has to the family that they have known for two or three years."

¶9 For the fourth factor, the court addressed that it was difficult to discern the wishes of children as young as F.G. and R.G. However, it noted that the children's guardian *ad litem* believed that it was in their best interests to terminate parental rights. The court concluded that the fifth factor on time of separation, there was ample testimony to support that the children had been removed from L.I.'s care at seven months for F.G. and days after birth for R.G. The children had been in out of home care for a "significant amount of time." The time of separation was three years for F.G. and two years for R.G. The court commented that "[t]ime is different for a child than it is for an adult."

¶10 Finally, the court considered the sixth factor, and concluded that the children "would be better able to enter into a more stable and permanent family relationship as a result of the termination of parental rights." Taking into account the current conditions of each child's placement, the court noted that each child has been in the same, stable foster placement since her removal—F.G. and R.G.

6

were placed in different foster homes, but there was contact between the foster placements.

¶11    The court "conclude[d] that as a matter of law that termination of parental rights has been proven by clear, convincing and satisfactory evidence[.]" The court ordered the termination of L.I.'s parental rights.  L.I. appeals. Additional relevant facts are included below.

## DISCUSSION

¶12    L.I. argues that the circuit court erroneously exercised its discretion when it ordered the termination of her parental rights to F.G. and R.G.  The determination of whether termination of parental rights is in the best interests of the child is governed by the statutory process in WIS. STAT. ch. 48 and the factors under § 48.426(3).   The decision to terminate parental rights is within the discretion of the circuit court after the grounds for termination have been proven. *See Gerald O. v. Susan R.,* 203 Wis. 2d 148, 152, 551 N.W.2d 855 (Ct. App. 1996).  We will not overturn a circuit court's discretionary decision unless the court erroneously exercised its discretion.  WIS. STAT. § 805.17(2).  A circuit court properly exercises its discretion when it examines the relevant facts, applies a proper standard of law, and using a demonstrated rational process reaches a conclusion that a reasonable judge could reach.[6]  *Dane Cnty. DHS v. Mabel K.*, 2013 WI 28, ¶39, 346 Wis. 2d 396, 828 N.W.2d 198.

---

[6] In her reply brief, L.I. takes issue with the standard of review articulated by the State, which L.I. interprets to mean she would need to show that the circuit court erred when it considered the facts *and* the standard of law *and* in its demonstrated rational decision-making. We agree it is not L.I.'s burden to show error in all three steps.  However, if our review shows that the circuit court's considerations in all three steps were without error, then its decision is not an erroneous exercise of discretion.

¶13    L.I. argues that the circuit court misapplied the third statutory factor, the harm to the child from severing the legal relationship.  L.I. contends that the circuit court improperly concluded that the children's relationship with L.I. was not substantial because it was not as close as the children's relationship to their respective foster parents.  L.I. points to the circuit court's oral findings at the dispositional hearing:

> As to [L.I], I am sympathetic to the fact she has made her best efforts with her cognitive challenges but her relationship with [F.G.] and [R.G.] is minimal compared to the relationship that [they] have with their caregivers so I would not call it substantial.

L.I. argues that the relative strengths of the children's relationships was not the legal question before the court.  L.I. contends that the statute does not create a balancing test to determine this factor.

¶14    The State argues that the circuit court is allowed to consider any additional factors that relate to the best interest of the child, with the statutory language setting forth that the court shall "not be limited" to the list of factors in the statute.  *See* WIS. STAT. § 48.426(3).  The record reflects that the circuit court expressly acknowledged it was "not bound by just the six factors listed in the statute.  There are other things [it] can consider in making [its] decision and in [its] discretion as to what should happen."  The State argues that the circuit court was not misapplying § 48.426(3)(c), the "harm to the child" factor, or the proper standard of law.  We agree, it is clear that the circuit court was considering the foster parent relationships in addition to the six statutory factors.

¶15    Our supreme court has interpreted WIS. STAT. § 48.426(3)(c) and the considerations required of the circuit court to "evaluate the effect of a legal severance on the broader relationships existing between a child and the child's

birth family." ***State v. Margaret H***, 2000 WI 42, ¶21, 234 Wis. 2d 606, 610 N.W.2d 475. It explained that "[t]hese relationships encompass emotional and psychological bonds fostered between the child and the family." ***Id.*** Here, we conclude that the circuit court considered the third factor in accordance with the law. It acknowledged that L.I. loved her children and that her children knew her and loved her, but it concluded that "[t]he desire to be a parent is important but unless you're doing the work, [love is] not enough, not for the children[.]" The court noted L.I.'s lack of follow through and her cognitive disabilities. We conclude it is not clearly erroneous that that circuit court found the relationship between L.I. and her children minimal.

¶16    The circuit court also considered the children's potential future with their respective foster parents. We conclude there was no error under the law to do so. In its oral ruling, the court expressly noted that under ***Margaret H.***, the circuit court should consider unenforceable an adoptive resource's promise to maintain a relationship with the biological parents after a termination. The record reflects that the court thoroughly considered the best interests of F.G. and R.G. when it made this decision: it reviewed on the record its consideration of all of the statutory factors and then it engaged in an analysis of the children's lives with their foster parents and their possible future.

¶17    The circuit court's analysis was centered on the third factor; however, it was not improperly focused there. "Although an evaluation of substantial relationships and the harm of a legal severance is indeed critical to the court's determination, exclusive focus on any one factor is inconsistent with the plain language of WIS. STAT. § 48.426(3)." ***Id.***, ¶35. We defer to the circuit court as to the weight of each factor when the court properly examined each factor on the record. ***Id.***, ¶29. Here, the circuit court examined each factor on the record. It

considered the relevant facts under the correct standard of law and it reached a decision a reasonable circuit court could rationally make.  *See **Mabel K.***, 346 Wis. 2d 396, ¶39.  We conclude that the circuit court did not erroneously exercise its discretion.

## CONCLUSION

¶18     For the reasons stated above, we conclude that circuit court's orders terminating L.I.'s parental rights was made in the best interests of F.G. and R.G. in compliance with the statutory mandate in WIS. STAT. § 48.426.  Therefore, we affirm the circuit court's orders terminating L.I.'s parental rights.

*By the Court.*—Orders affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)4.