COURT OF APPEALS
DECISION
DATED AND FILED

December 6, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP1454**

STATE OF WISCONSIN

Cir. Ct. No. 2021TP89

IN COURT OF APPEALS
DISTRICT I

IN RE THE TERMINATION OF PARENTAL RIGHTS TO A. H., A PERSON UNDER THE AGE OF 18:

STATE OF WISCONSIN,

PETITIONER-RESPONDENT,

V.

D. H.,

RESPONDENT-APPELLANT.

APPEAL from an order of the circuit court for Milwaukee County: ELLEN R. BROSTROM, Judge. *Affirmed.*

¶1    WHITE, J.[1]  D.H. appeals the order terminating his parental rights to his child, A.H.  D.H. argues that the circuit court erroneously exercised its discretion because it did not consider the best interests factor required to determine the disposition of the termination of parental rights (TPR) petition.  Upon review, we conclude that the court considered the best interests of A.H. and addressed her interests through the consideration of the six statutory factors, on the record, in accordance with Wisconsin law.  Accordingly, we affirm.

## BACKGROUND

¶2    The State filed a petition to terminate D.H.'s rights to A.H. in April 2021.  A.H. was born in October 2018 and was removed from the care of D.H. and A.T., her mother, in July 2019 due to concerns about her low weight and lack of weight gain while in the care of her parents.  As grounds for the TPR, the state alleged continuing CHIPS,[2] under WIS. STAT. § 48.415(2), and failure to assume parental responsibility, under § 48.415(6).

¶3    In October 2021, after a jury trial on the grounds for both parents, the jury returned verdicts that each of the grounds for the TPR petition existed for both parents.[3]  For the continuing CHIPS count against D.H., the jury concluded that the Division of Milwaukee Child Protective Services (DMCPS) made

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[2] "CHIPS is the commonly used acronym to denote the phrase 'child in need of protection or services' as used in the Wisconsin Children's Code, chapter 48, Stats." *Marinette Cnty. v. Tammy C*., 219 Wis. 2d 206, 209 n.1, 579 N.W.2d 635 (1998).

[3] Although A.T. filed a notice of intent to seek postdisposition relief; ultimately, she did not appeal the TPR order.  We address her and her case only to the extent that it relates to D.H.'s case.

reasonable efforts to provide court-ordered services and that D.H. failed to satisfy the conditions established for the safe return of A.H. to his care. For the second ground, the jury found that D.H. failed to assume parental responsibility for A.H. The court found both parents unfit, in accordance with the statutory requirement after grounds for a TPR are found. *See* WIS. STAT. § 48.424(4).

¶4 The case then proceeded to the dispositional phase of the TPR proceedings. The court heard testimony from the child welfare case manager from Children's Hospital, who managed A.H.'s case for DMCPS, and A.H.'s foster mother, who had cared for A.H. for a little over two years at the time of disposition. Additionally, the State, the guardian ad litem (GAL), and counsel for each parent made closing arguments in support of their respective positions on the petition.

¶5 The circuit court then made its findings, ultimately concluding that "on balance the six statutory factors that I have to consider mitigates strongly in favor of termination and adoption." The court addressed that a TPR case is "very difficult" and acknowledged that D.H. and A.T. both love A.H. very much. The court then addressed the required statutory considerations.

¶6 First, the court found it was "very likely that [A.H.] will be adopted after termination. She has been in the [foster parents'] home for more than two years now[.]" The court concluded that the foster parents have "demonstrated their commitment to wanting to adopt her. It sounds like their whole family is committed to that in a really healthy, loving way." It noted that the foster family "love A.H. and she loves them as well." Finally, it stated that "if something tragic should happen to the [foster parents], she's certainly a very adoptable little girl."

¶7      Turning to A.H.'s "age and health at the time of removal," the court found her health "was quite precarious. She had fallen to the first percentile and within danger of hospitalization. Now she's great. She's right on track weight wise." The court noted that "[a]t the time of removal she was behind on a number of developmental milestones. Probably due to the lack of nutrition. But thankfully it sounds like she rapidly regained that and made it up as she was being properly fed." The court commented that A.H. did not have "any significant medical issues today"; however, there were some issues being monitored. The court found it "remarkable" that A.H. "does not appear to have any behavioral health issues of any significance." The court noted that "[a] lack of feeding in infancy can really have a profound effect not only physically and developmentally, but psychologically." The court acknowledged that A.H. is "going to have some things to process" going forward, as a result of her removal, the TPR, adoption, and if adopted by the foster parents, being adopted by people of a different race.

¶8      The court then turned to A.H.'s wishes, stating, "She's too little to tell us what she wishes." However, the court noted that from A.H.'s perspective, the foster parents' home is the "only home she has any conscious memory of" and that "we do know that the removal of a child from their home is traumatic." The court continued that A.H.'s only memories of living with her parents were pre-conscious sensory memories, which the court suspected would have "some pretty traumatic aspects to them." The court then recounted several "concerning" incidents from the record. First, A.H. experienced when A.T. was pushed down the stairs at "seven or eight months pregnant," because "that infant can hear, that infant can feel, that infant can feel the mother's stress." Second, there were "additional problems with domestic violence." The court found it positive that "[D.H.] has only been charged with misdemeanors" and not "felony level

offenses." The court concluded the consideration of wishes stating that if A.H. "could process all of this she would tell [the court] that she wants to stay where she is safe and well cared for."

¶9     The court then addressed that A.H. "has been separated from her parents for most of her life. She was removed at nine months and now she's almost three." The court considered that to be "a significant period of time for her … really all of her conscious lifetime." The court found that "[n]either [D.H.] nor [A.T.] have gotten themselves to the point where they could safely parent her on a full-time basis."

¶10     The court then discussed A.H.'s "substantial relationships" with her family. A.H. "does not have any siblings. She does not have a substantial relationship with any extended family members." The court noted that A.H.'s contact with her extended family "has been sporadic and limited." The court commented that A.H. may have had more contact with A.T.'s mother; however, "sadly [she] has just passed away." Further, the court noted that "[i]n terms of her relationship with her parents," A.H. "knows who her parents are" but contact with them "has been such a limited part of her life." The court noted that "before the age of two" a child "can't really form a bond with someone that they're not physically with on a regular basis. They just don't have the intellectual or developmental capacity to do that." The court concluded that it could not find that "from [A.H.'s] perspective that her relationship with her parents is substantial."

¶11     The court concluded that terminating both parents' rights was in A.H.'s best interests. It granted the TPR petitions.

¶12     D.H. appeals.

5

## DISCUSSION

¶13    D.H. argues that the circuit court failed to consider A.H.'s best interests in terminating D.H.'s parental rights. He contends that a review of the circuit court's oral decision "wholly omits consideration of and reference to the best interests factor." The State and GAL argue that the court followed the statutory guidance to determine whether terminating D.H.'s parental rights was in A.H.'s best interests.

¶14    D.H. is correct that "[t]he best interests of the child shall be the prevailing factor considered by the court in determining the disposition of all proceedings" with regard to the termination of parental rights. *See* WIS. STAT. § 48.426(2). However, he misunderstands the statutory process to accomplish this goal. In the first phase of the process to determine the outcome of a petition for an involuntary TPR, the petitioner must show by clear and convincing evidence that the grounds enumerated in the petition exist. WIS. STAT. §§ 48.415, 48.424. It is undisputed that the jury verdict's found that the State proved that the grounds for the TPR existed.

¶15    If grounds are found to exist, then the court proceeds to the second phase, in which the court determines the disposition of the TPR petition. WIS. STAT. § 48.427. During the dispositional hearing, the circuit court must consider the "best interests" standard and, at minimum, the six statutory factors:

> (a) The likelihood of the child's adoption after termination.
>
> (b) The age and health of the child, both at the time of the disposition and, if applicable, at the time the child was removed from the home.
>
> (c) Whether the child has substantial relationships with the parent or other family members, and whether it would be harmful to the child to sever these relationships.

(d) The wishes of the child.

(e) The duration of the separation of the parent from the child.

(f) Whether the child will be able to enter into a more stable and permanent family relationship as a result of the termination, taking into account the conditions of the child's current placement, the likelihood of future placements and the results of prior placements.

WIS. STAT. § 48.426(3). *See Steven V. v. Kelley H.,* 2004 WI 47, ¶27, 271 Wis. 2d 1, 678 N.W.2d 856 (explaining that at the dispositional phase, the circuit court considers any relevant evidence to the TPR proceeding and "must at a minimum consider the six 'best interests' factors set forth in []§ 48.426(3).") Although D.H. contends that the "best interests" standard was not addressed by the court, he does not argue that the circuit court failed to address the six statutory factors.

¶16 To the extent that we interpret D.H. to argue that the circuit court failed to address the "best interests" standard because the court did not say the words "best interests" in its oral ruling, we reject this argument.[4] The circuit court is not required to "utter any magic words" in order for this court to review whether the circuit court's legal analysis complied with the statutory mandates. *See State v. Robert K.*, 2005 WI 152, ¶33, 286 Wis. 2d 143, 706 N.W.2d 257.

¶17 To understand why D.H.'s argument fails, we turn to the statute: "In considering the best interests of the child under [WIS. STAT. § 48.426] the

---

[4] We note that D.H. failed to file a reply brief and, ultimately, failed to refute the State's argument that the circuit court's failure to use the term "best interests" in its analysis does not de facto mean that the circuit court erroneously exercised its discretion. *See United Coop. v. Frontier FS Coop.*, 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578 (concluding that a lack of response by a party may be taken as a concession).

court shall consider but not be limited" to an enumerated list of six factors. As our supreme court explained, the six statutory factors "give contour" to the best interests standard and "serve to guide courts in gauging whether termination is the appropriate disposition." *State v. Margaret H*., 2000 WI 42, ¶34, 234 Wis. 2d 606, 610 N.W.2d 475. In other words, this court reviews whether the circuit court addressed at least those six factors to determine whether the circuit court complied with the statutory mandate to consider the best interests of a child in an involuntary TPR proceeding.

¶18 Our examination of the record shows that the circuit court accepted the jury verdict that the grounds existed, made the required unfitness finding, and then turned to the dispositional phase. At the beginning of its oral decision, the court stated that it had to "shift … focus to look at it from [A.H.'s] perspective." This shift is focusing on "the polestar of all determinations" in chapter 48: the best interests of the child. *See Sheboygan Cnty. DHHS v. Julie A.B.*, 2002 WI 95, ¶30, 255 Wis. 2d 170, 648 N.W.2d 402. The record reflects that the circuit court carefully considered each of the statutory factors and the court's comments repeatedly expressed concern for A.H. and her future. We are satisfied that the circuit court properly considered the best interests of A.H. and the best interests standard when it determined that the TPR of her parents' rights was warranted.

¶19 Ultimately, the decision to terminate parental rights is within the discretion of the circuit court. *See Gerald O. v. Susan R.,* 203 Wis. 2d 148, 152, 551 N.W.2d 855 (Ct. App. 1996). We will sustain a circuit court's discretionary decision unless the court erroneously exercised its discretion. WIS. STAT. § 805.17(2). A circuit court properly exercises its discretion when it examines the relevant facts, applies a proper standard of law, and using a demonstrated rational process reaches a conclusion that a reasonable judge could reach. *Dane Cnty.*

*DHS v. Mable K.*, 2013 WI 28, ¶39, 346 Wis. 2d 396, 828 N.W.2d 198. Here, we conclude there was no error in the circuit court's exercise of discretion.

## CONCLUSION

¶20 For the reasons stated above, we conclude that the circuit court did not erroneously exercise its discretion when it ordered the termination of D.H.'s parental rights to A.H.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.